FRANK GLOVER

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 26, 1903.*

1. INDICTMENT—*indictment sufficiently certain which states offense in language of the statute.* Under section 6 of division 11 of the Criminal Code an indictment is sufficiently technical and correct which states the offense in substantially the language of the statute.

2. SAME—*language of indictment construed.* An indictment under section 93 of division 1 of Criminal Code, (Rev. Stat. 1874, p. 365,) which charges that the accused "did then and there threaten to kill and murder one Joseph Wiley, with intent then and there * * * unlawfully and feloniously to extort money from him, the said Joseph Wiley," sufficiently indicates that the threat was intended for the said Joseph Wiley and that it was within his hearing, and the exact words of the threat need not be stated.

3. SAME—*the word "malicious" is equivalent to "willful."* The charge in an indictment that a prohibited act was done "maliciously" meets the requirement of a statute which, in describing the offense, provides that the act must have been done "willfully."

4. SAME—*when indictment is sufficient, generally.* An indictment is sufficient if the defendant is so notified of the charge as to be able to prepare his defense, and the jury can understand the offense and the court pass sentence in case of conviction, and the evidence is preserved in the record so as to protect the accused against subsequent prosecution.

5. EVIDENCE—*admissibility of evidence tending to prove other offenses.* If evidence tends to prove the offense for which the accused is on trial, the mere fact that it also tends to prove other offenses does not render it inadmissible.

6. SAME—*admissibility of previous threats.* On the trial of a charge of extorting money by threats, evidence that the accused upon a former occasion threatened to kill the same party unless he paid him money is competent to characterize the conduct and language of the accused at the time the money was extorted.

7. INSTRUCTIONS—*harmless errors in instructions will not reverse.* A verdict in a criminal case will not be reversed for inaccuracies in instructions which it is clear had no effect to produce the verdict.

8. CRIMINAL LAW—*what sufficient to sustain conviction for extorting money.* A conviction under an indictment for extorting money by threatening to kill is sustained by proof that the language and conduct of the accused caused his victim to believe his life would be taken unless he paid the money; and it is not necessary to prove accused was armed, or that he used the word "kill" in his threats.

9. APPEALS AND ERRORS—*when propriety of State's attorney's re-marks is not presented for review.* The question of the propriety of the State's attorney's remarks in a criminal trial is not presented for review on appeal, where the objection was not made at the trial, but by affidavits filed with the motion for new trial.

WRIT OF ERROR to the Circuit Court of Moultrie county; the Hon. W. G. COCHRAN, Judge, presiding.

The grand jury, at the September term of the circuit court of Moultrie county, returned an indictment against Frank Glover, consisting of three counts. The first count charged robbery from the person of one Joseph Wiley by violence, the second by intimidation, and the third a violation of section 93*a* of the Criminal Code, which reads as follows: "Whoever, either verbally or by written or printed communication, maliciously and willfully threatens to  *  *  *  kill or murder another person,  *  *  * with intent thereby to extort any money, goods, chattels, or other valuable thing, shall be imprisoned in the penitentiary not less than one nor more than twenty years," (Laws of 1901, p. 144,) and was, omitting the formal part, in the following language: "That Frank Glover, late of said county, on the first day of September, in the year of our Lord one thousand nine hundred and two, at and within the said county of Moultrie, and State of Illinois, aforesaid, knowingly, feloniously and maliciously, verbally did then and there threaten to kill and murder one Joseph Wiley, with intent then and there upon the part of him, said Frank Glover, by means of the threat so made by him, the said Frank Glover, thereby then and there unlawfully and feloniously to extort money from him, the said Joseph Wiley." A motion was made to quash the indictment and each count thereof, which was overruled, and a plea of not guilty having been entered, a trial was had and the defendant was found guilty under the third count of the indictment, and after overruling a motion for a new trial and in arrest of judgment the court sentenced him to the penitentiary for an inde-

terminate period, and a writ of error has been sued out from this court to reverse said judgment.

The facts upon which the conviction was based were substantially as follows: A feud between the Wiley and Glover families, who were neighbors, in Moultrie county, had existed for many years. Some time prior to the difficulty out of which this indictment arose, a fight had occurred between Wiley and the defendant. A prosecution was instituted by Wiley against Glover, and he was fined a considerable amount. Thereafter they met near their homes, and the defendant demanded of Wiley that he pay to him the sum of $500 to reimburse him for the amount he had paid out in fines and attorney's fees growing out of said prosecution. Wiley refused to pay said claim, and said he had paid out a considerable sum himself and had lost an eye in the difficulty, to which Glover replied, "If you think more of $500 than you do of your life and your family's life, go ahead." This meeting was in April. In the following August the parties met in Allenville, when Glover demanded of Wiley that he pay to him $200, which he claimed they had agreed was to be paid him by Wiley in settlement of all matters in difference between them. After they had had a few words with reference to the payment of said money, Wiley started to run and called for help. Glover ran after him. Wiley jumped on the platform in front of McCabe's store. Glover followed him and got between him and the store door. After they were upon the platform Glover took Wiley by the right arm with his left hand, during which time he had his right hand in the right-hand pocket of his sack-coat. Two witnesses testified that about that time they saw what they thought was a revolver in the right-hand coat pocket of Glover. As they stood upon the platform, the defendant still holding Wiley by the arm, with his right hand in his coat pocket, he said to him, "You big Irish son-of-a-bitch, you promised me $200, and she's got to come." At that time Wiley was begging

the by-standers to assist him.  Glover, still holding him by the arm, said: "You've got to get it; it's got to come; this is Frank Glover a-hold of you; you've got to get me that money; it's got to come; I mean business."  At that time McCabe came out of the store and ordered them from the platform.  J. R. Martin, a justice of the peace, ordered Glover to desist and directed the by-standers to arrest him.  No one interfered, although six or eight men were present.  A constable who was present testified he did not interfere because he was unarmed.  Wiley said to those present: "I want you to help me, boys; he is going to kill me; I have got to get away from here; I have got to have some help."  He further testified that "just at that time I heard him cock his gun; I did not see his gun; I thought I heard it."  He also testified Glover said, "The first son-of-a-bitch that lays hands on me I will kill you."  Wiley then called to McCabe to bring him $100.  McCabe brought that amount of money from the store and gave it to Wiley and Wiley gave it to Glover, when Glover released him and went away.

JOHN R. EDEN, JOHN E. JENNINGS, and FRANK SPITLER, for plaintiff in error.

H. J. HAMLIN, Attorney General, and W. K. WHITFIELD, State's Attorney, (GEORGE B. GILLESPIE, and EMERY ANDREWS, of counsel,) for the People.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

It is assigned as error that the court erred in overruling a motion to quash the third count of the indictment and in arrest of judgment.  The count was substantially in the language of the statute creating the offense, and was sufficient. . Section 6 of division 11 of the Criminal Code (1 Starr & Cur. Stat.—2d ed.—p. 1389,) provides: "Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states

the offense in the terms and language of the statutes creating the offense, or so plainly that the nature of the offense may be easily understood by the jury." In *Strohm* v. *People,* 160 Ill. 582, the indictment charged a violation of the statute prohibiting the selling, giving or showing to minors of any publication principally made up of criminal news, and it was held sufficient to describe the offense in the language of the statute, without setting out the supposed prohibited matter or excusing a failure so to do. In *Honselman* v. *People,* 168 Ill. 172, the indictment charged the defendant with having committed the "crime against nature," and it was held, the offense having been charged in the language of the statute, the indictment was good. In *White* v. *People,* 179 Ill. 356, it was held that an indictment for an attempt to commit burglary which stated the offense in the language of the statute, and described the overt act to be that the accused "did then and there attempt to push back the lock on the door of said dwelling house," was sufficiently plain in its description of the offense. In *Cannady* v. *People,* 17 Ill. 158, it was said: "Where statutes create offenses, indictments should contain proper and sufficient averments to show a violation of the law. * * * Great niceties and strictness in pleading should only be countenanced and supported when it is apparent that the defendant may be surprised on the trial, or unable to meet the charge or make preparation for his defense for want of greater certainty or particularity in the charge. Beyond this, it tends more to the evasion than the investigation of the charge, and becomes rather a means of escaping punishment for crime than of defense against the accusation."

It is, however, urged that the indictment is insufficient in this: that it does not set out the words constituting the threats. Such averment was unnecessary. (21 Ency. of Pl. & Pr. p. 673; *Commonwealth* v. *Moulton,* 108 Mass. 307; *State* v. *O'Mally,* 48 Iowa, 501.) In *Commonwealth* v. *Moulton, supra,* it was said: "This indictment is for

attempting to extort money by the threat of a criminal accusation. (Gen. Stat. chap. 160, sec. 28.) It was moved to quash it because the language in which the alleged verbal threat was made is not set forth. But it is charged that the threatened accusation was, of having committed the crime of adultery with a certain person whose name is given. This is sufficient. The precise words of the threat need not be set out. It is enough if the substance is stated. If the indictment attempted to give the words used, yet it would only be necessary to prove the allegation substantially." And in *State* v. *O'Mally, supra,* on page 502 it is said: "Counsel for the defendant insist that the indictment is bad for the reason that, as it does not set out the threatening words used by defendant, it alleges a legal conclusion. The language of the indictment is, that defendant did, 'willfully and maliciously, verbally threaten to kill and murder Zenana Staats and F. S. Wood.' This is not the allegation of a legal conclusion, but of the act of the defendant, and is sufficient without setting out the words used. The words of the defendant were not the gist of the offense, which is found in the intention of defendant to convey thereby a threat. The threat should be averred, and may be shown by the words used."

It is also said the indictment does not show to whom the threat was made. It is averred the defendant "did then and there threaten to kill and murder one Joseph Wiley, with intent then and there * * * unlawfully and feloniously to extort money from him, the said Joseph Wiley." This averment clearly indicates for whom the threat was intended, and that it was within the hearing of Wiley. *State* v. *Waite,* 101 Iowa, 378.

It is further urged that the word "willful," used in the statute, is omitted from said count of the indictment. The word "malicious" is used in lieu of the word "willful," and was sufficient. In Bishop on Criminal Procedure (vol. 1,—3d ed.—sec. 613,) it is said: " 'Willful,' in a stat-

ute against libel, is covered by 'malicious' in the indictment, the latter meaning all that the former does, and more."

If an indictment is so specific that the defendant is notified thereby of the charge which he is to meet and is able to prepare his defense, and evidence of the charge upon which he has been tried is preserved in the record so that he will be protected from a subsequent prosecution for the same offense, and the offense may be easily understood by the jury, and the court may be enabled to pass sentence upon him in case of conviction, the indictment, according to all the authorities, is sufficient. We do not think the court erred in overruling the motion to quash and in arrest of judgment.

The court, over the objection of the defendant, permitted the State's attorney, in his opening statement, to state to the jury the previous unfriendly relations existing between the prosecuting witness and the defendant; that the defendant had been arrested upon the complaint of Wiley, and fined; that he had demanded of Wiley payment to himself of the sum of $500 to reimburse him for the amount he had paid out for fines and attorney's fees, and upon Wiley's refusal to pay said sum the defendant said to him, "If you think more of $500 than you do of your life and your family's life, go ahead." Proof was also permitted, upon the trial, of the previous unfriendly relations existing between the parties, the arrest of the defendant upon the complaint of Wiley, the demand for money made by him upon Wiley, and the threat that followed his refusal to pay. The defendant has assigned as error the action of the court in permitting such statement to be made to the jury, and the introduction of said proof.

The rule is general, where a person is indicted for an offense, evidence of another or different offense is not admitted. It, however, has its exceptions, and if the evidence tends to prove the charge in the indictment, the

mere fact that it may tend to prove another crime does not make it inadmissible. (*Williams* v. *People*, 166 Ill. 132.) In this case the charge was that of making threats for the purpose of extorting money, and we think it was proper to show the relation which existed at the time, and before the threats were made, between the parties, for the purpose of characterizing the conduct of the parties and the language used by the defendant at the time it was claimed the money was extorted.   If the defendant had threatened to kill Wiley upon a former occasion unless he paid him money, and they were enemies, Wiley would be much more easily terrorized and part with his money much more readily by reason of a subsequent threat than though the relation of the parties theretofore had been friendly.  The jury, in order to understand the effect upon Wiley of what occurred between the parties at the time of the alleged offense, should know their previous relations, and the evidence was properly admitted for that purpose.   (*Farris* v. *People*, 129 Ill. 521; *Williams* v. *People*, *supra; Henry* v. *People*, 198 Ill. 162.)  If the evidence was properly admitted, it was not error for the State's attorney to call the attention of the jury thereto in his opening statement.   The court, upon the request of the defendant, should have limited the effect of said proof by a proper instruction.   The defendant, however, did not ask such an instruction.   We are of opinion the assignment of error is not well made, and that the judgment should not be reversed by reason thereof.

It is next assigned as error that the court improperly instructed the jury on behalf of the defendant in error, improperly modified the instructions offered on behalf of the plaintiff in error before giving them to the jury, and improperly refused certain instructions offered on his behalf.   We have examined the instructions given, modified and refused, and are of the opinion the jury were instructed substantially correctly.   When the court can clearly see that substantial justice has been done, a case

204—12

will not be reversed because of some inaccuracy in an instruction which, it is clear, had no effect to produce the verdict rendered in the case. Especially is this true if the jury, upon the entire charge, have been fairly instructed as to the law.

It is assigned as error that the verdict is not supported by the evidence. We think it is. While there is a conflict in the evidence as to just what was said and done at the time the plaintiff in error obtained the $100 from Wiley, it cannot be disputed that Glover obtained the money from Wiley without the consent of Wiley and by reason of what he did and said at the time he obtained the money. In order to force Wiley to pay to him said sum of money, he not only terrorized Wiley and the other citizens who were present, but defied the officers of the law. Whether he was armed or not makes no difference. Wiley's conduct shows that he thought Glover was armed, and whether Wiley had agreed to pay him $200 or not is wholly immaterial. The law will not suffer creditors to collect their debts by force and intimidation. Neither can the defendant excuse himself by proof that he did not use the word "kill," or any other set phrase of speech, if by his language, coupled with his conduct, he caused Wiley to believe he intended to take his life unless he satisfied his demand.

The trial court's attention was not challenged to the closing remarks of the State's attorney at the time they were made, and a ruling requested thereon. That question was first raised by affidavits filed with the motion for a new trial, hence no question as to their propriety is before this court for decision. *Mayes* v. *People*, 106 Ill. 306.

The statute did not require the jury to fix the time of the imprisonment of the defendant in the penitentiary by their verdict. *Hagenow* v. *People*, 188 Ill. 545.

We find no reversible error in this record. The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*