## The People of the State of Illinois, Defendant in Error, v. Max Stricker, Plaintiff in Error.

## Gen. No. 16,385.

1. INFORMATION—*effect of omission of word "unlawful."* The omission of the word "unlawful" from an information is not material where it concludes "contrary to the form of the statute," etc., as such allegation is equivalent to the employment of the word unlawful.

2. LABELS AND TRADEMARKS—*what proof not essential in prosecution*

*for use of counterfeit.* If the label alleged to have been counterfeited is shown to have been the property of a *de facto* corporation it is sufficient notwithstanding the information charge ownership in a corporation organized under the laws of a specified state.

Error to the Municipal Court of Chicago; the HON. EDWIN K. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed May 23. 1912. Rehearing denied June 6, 1912.

RICHARD J. COONEY and JOHN A. VERHOEVEN, for plaintiff in error.

JOHN E. W. WAYMAN, for defendant in error.

MR. JUSTICE FITCH delivered the opinion of the court.

Max Stricker, doing business as Imperial Distilling & Cordial Company, plaintiff in error, and hereinafter called defendant, was found guilty of knowingly selling a bottle containing a liquid resembling gin, to which bottle was attachel a label which was a counterfeit and an imitation of a label theretofore adopted and used by Tanqueray Gordon & Company, a corporation. After a motion for new trial was heard and overruled, the court entered judgment on the verdict and the defendant was sentenced to pay a fine of $200 and to ten months' imprisonment in the House of Correction, from which judgment the defendant has prosecuted a writ of error to this court.

The information and the offense therein charged are based upon Sections 1 and 2 of Chapter 140 of the Revised Statutes, as amended in 1895, being an act of the legislature entitled, "An act to protect associations, unions of working men and persons in their labels, trade marks and forms of advertising." Section 1 of that act makes it unlawful to counterfeit or imitate any label, trade mark, design or form of advertisement, or to utter or circulate any counterfeit thereof, which has been adopted or used by any per-

son, association or union of working men for the purpose of making known or distinguishing any goods, wares or merchandise as having been made, manufactured, produced, prepared, packed or put on sale by such person, association or union. Section 2 provides, among other things, as follows: "Whoever counterfeits or imitates any such label, trade mark, term, design, device or form of advertisement * * * or knowingly sells or disposes of any goods, wares, merchandise or other product of labor contained in any box, case, can, or package to which or on which any such counterfeit or imitation is attached, affixed, painted, stamped or impressed * * * shall be punished by a fine of not less than one hundred (100) dollars nor more than two hundred (200) dollars, or by imprisonment for not less than three (3) months nor more than one (1) year, or by both such fine and imprisonment."

The case was tried upon an amended verified information which, omitting the signatures and verification, is as follows:

"John M. Boteler, in his own proper person, comes now here into court, and, in the name and by the authority of the People of the State of Illinois, gives the court to be informed and understand that Max Stricker, doing business as Imperial Distilling and Cordial Company, late of the said City of Chicago, heretofore, to-wit, on the 6th day of May, A. D. 1909, at the City of Chicago, aforesaid, did sell a certain bottle containing goods, wares and merchandise, to-wit, a certain liquid resembling gin, to which bottle was attached a counterfeit or imitation label, as he, the said Max Stricker, well knew then and there, which counterfeit and imitation label is described as follows, to-wit: A label about four inches long by about three and one-half inches wide, containing thereon words in the English language purporting to be a report on Gordon & Co.'s 'dry gin,' London, dated September 2, 1899, by one E. Godwin Clayton, F. T. C. F. C. S., consulting

chemist and analyst, which said label was then and there a counterfeit and an imitation of a certain label theretofore adopted and used and then and there being used by Tanqueray, Gordon & Co., a corporation, organized under the laws of Great Britain, which said label was adopted and used by said corporation for the purpose of designating and making known and distinguishing certain goods, wares and merchandise as having been made, manufactured, packed and put up and put on sale by the said Tanqueray, Gordon & Co., which said label so adopted and being used as aforesaid was, on February 20, 1907, filed in the office of the secretary of state of the State of Illinois, as is by law provided, contrary to the form of the statute in such case made and provided and against the peace and dignity of the People of the State of Illinois.''

The following facts appear from the evidence. In May, 1909, the defendant, under the name of Imperial Distilling and Cordial Company, was engaged in the business of buying and selling liquors, and in compounding and bottling the same. He occupied a four story and basement building at 81 Illinois street, Chicago. In the basement were kept crates of empty, used bottles, of various kinds, which were brought in by the wagon load. The top floor was equipped and used for washing and filling such bottles. The third floor was used for "distilling and compounding;" the second was filled with barrels of liquor, and the first was the office and salesroom, containing cases of filled and labeled bottles of wine, brandy, whiskey and gin. It was shown that the genuine "Gordon Gin" is made by Tanqueray, Gordon & Co. of London, England; that the actual cost of such gin to importers in Chicago is $8.05 per case of a dozen bottles, when received in car load lots; that the defendant was selling what purported to be the same commodity at from $6.50 to $8.00 a case, and out of these prices he was paying commissions as high as fifteen per centum for selling the same. For several months prior to May 6, 1909, the

Robert T. Mott Amusement Co. conducted a saloon called the "Pekin Buffet" in State Street, Chicago, and purchased what gin it used from the defendant exclusively. On the day last mentioned defendant sold to Mott two cases of gin at $8.00 a case and billed the same to Mott, who paid for it in the usual course of business, after deducting a cash discount of two per centum. One of the bottles of this sale was identified and offered in evidence. Upon the bottle was pasted a label, which was clearly shown to be a counterfeit or imitation of the label theretofore adopted and in use by Tanqueray, Gordon & Co. on their bottles of genuine "Gordon Gin," the fact of such adoption being shown by the certificate of the Secretary of State as provided by Section 3 of the act above mentioned.

It is urged by defendant's counsel (1) that the verdict is not sustained by the evidence, (2) that the instructions given were inaccurrate and misleading, (3) that the motion to quash the amended information (which was made before the trial) should have been allowed, for the reasons that the amended information does not allege the sale was "unlawful" nor to whom it was made, and that the label is not set out in *haec verba;* (4) that it was not shown that Tanqueray, Gordon & Co. is a "corporation organized under the laws of Great Britain;" and (5) that a variance exists between the ownership of the label as alleged in the information and as stated in the certificate of the Secretary of State.

As to the alleged variance, the record shows that it does not in fact exist. Counsel have been misled by a typographical error or omission in the abstract. As to the omission of the word "unlawful" from the information, the conclusion "contrary to the form of the statute * * * and against the peace" is an equivalent allegation. State v. Tibbetts, 86 Me. 189, 191.

The fact that Tanqueray, Gordon & Co. was "a cor-

poration organized under the laws of Great Britain,''
seems to have been conceded in the court below, for
defendant's counsel attempted to prove that a corpora-
tion of that name and so organized had brought a civil
suit against the defendant in the Federal Court for
the value of the goods alleged to have been sold by him
by the use of counterfeit labels, and that such suit
was pending at the time of the trial of this case in the
court below. If such an allegation is material or neces-
sary to be proved in this class of cases, which may be
doubted, (Quigley v. People, 3 Ill. 301), it was only
necessary to prove the *de facto* existence of the alleged
corporation by user, reputation or otherwise. Kos-
sakowski v. People, 177 Ill. 563; Hurd's Stat. of Ill.,
Chap. 38, Sec. 486 (1909 Ed.). The allegation that the
corporation was ''organized under the laws of Great
Britain'' was unnecessary in any event, and may be
treated as surplusage. McCarney v. People, 83 N. Y.
408.

We apprehend that no one would contend that an
information, which partakes of the nature of a declara-
tion in a civil suit, and may be amended (Long v.
People, 135 Ill. 435), must be any more explicit in its
allegations than an indictment; and as to the latter the
Criminal Code (Sec. 6 of Div. XI) provides: ''Every
indictment   *   *   *   shall be deemed sufficiently tech-
nical and correct which states the offense in the terms
and language of the statutes creating the offense, or
so plainly that the nature of the offense may be easily
understood by the jury.'' The information in this case
is substantially in the language of the statute and, in
our opinion, it is stated so plainly that its meaning
could not be misunderstood by the jury. This is all
the law requires. Maxwell v. People, 158 Ill. 248;
Graham v. People, 181 Ill. 477; People v. Scattura,
238 Ill. 313; Strohm v. People, 160 Ill. 582; White v.
People, 179 Ill. 356.

In Glover v. People, 204 Ill. 170, 174, the court said:

"In Cannaday v. People, 17 Ill. 158, it is said: 'Where statutes create offenses, indictments should contain proper and sufficient averments to show a violation of the law.  *  *  *  Great niceties and strictness in pleading should only be countenanced and supported when it is apparent that the defendant may be surprised on the trial, or unable to meet the charge or make preparation for his defense for want of greater certainty or particularity in the charge.  Beyond this, it tends more to the evasion than the investigation of the charge, and becomes rather a means of escaping punishment for crime than of defense against the accusation.' "

It will be unnecessary to discuss at length the remaining questions raised.  We have given them due and careful consideration and find nothing which, in our opinion, is reversible error.  We are satisfied beyond any reasonable doubt from the evidence that the defendant is guilty as charged in the amended information.  The record before us shows that he has had a fair and impartial trial in which he was accorded every substantial right the law gives him, and deprived of none.  He made no defense upon the merits, but relied wholly on technical objections to the People's case.  To permit any of these technicalities to succeed in this court under such circumstances, would, in our opinion, be little else than a miscarriage of justice.

The judgment will be affirmed.

*Judgment affirmed.*