## PEIN ET AL. *v.* MIZNERR, BY NEXT FRIEND.

[No. 6,169. Filed February 18, 1908.]

1. STATUTES.—*Factory Act.—Intent.*—The legislative intent, in the passage of the factory act (Acts 1899, p. 231, §8021 *et seq.* Burns 1908), was to minimize the likelihood of injury from dangerous machinery. p. 257.

2. SAME.—*Language.—General, Following Specific.—Ejusdem Generis.*—The doctrine of *ejusdem generis* is that where general words follow specific words of the same nature, such general words will be restricted to the genus of the specific words. p. 257.

3. SAME.—*Factory Act.—Ejusdem Generis.—"Machine."*—Section nine of the factory act (Acts 1899, p. 231, §8029 Burns 1908), providing that "all vats, pans, saws, planers, cogs, gearing, belting, shafting, set-screws and machinery of every description therein shall be properly guarded," does not permit of the application of the *ejusdem generis* doctrine, since the specific words are not of the same genus as machinery—the general word. *Laporte Carriage Co.* v. *Sullender,* 165 Ind. 290, *contra.* pp. 257, 258.

4. SAME.—*Construction.—Ejusdem Generis.*—The doctrine of *ejusdem generis* is a rule of construction merely, and does not warrant the courts in evading a clear legislative intent. p. 258.

5. SAME.—*Construction.—Legislative Intent.*—The legislative intent should govern in the construction of statutes. p. 260.

6. APPEAL.—*Transfer.*—Where a controlling decision of the Supreme Court is deemed erroneous by the Appellate Court, the pending cause will be transferred, with recommendations, to the Supreme Court. p. 260.

From Marion Circuit Court (14,327); *Henry Clay Allen,* Judge.

Action by Mary E. Miznerr, by her next friend, against George W. Pein and another. From a judgment on a verdict for plaintiff for $3,000, defendants appeal. (For decision on transfer, see 170 Ind. —.) *Transferred to Supreme Court.*

*W. A. Ketcham* and *J. W. Hutchinson,* for appellants.

*George W. Galvin* and *William A. Reading,* for appellee.

ROBY, C. J.—This is an action by appellee to recover damages on account of the alleged failure of the appellants,

operators of a laundry, to guard a machine known as a
mangle, as provided by section nine of the act of April 27,
1899 (Acts 1899, p. 231, §8029 Burns 1908). It is the posi-
tion of the appellant that the machine described is not such
a machine as is required by said section to be guarded. This
question goes to the foundation of the case. If the judg-
ment is affirmed, it must necessarily be decided. If the
judgment is reversed, it is still one of those questions sure
to arise in a retrial, and therefore one upon which the par-
ties are entitled to a decision. The case of *Laporte Carriage
Co.* v. *Sullender* (1905), 165 Ind. 290, is cited as a control-
ling one. It is controlling to the extent to which it places
a construction upon §8029, *supra.* An attempt to deter-
mine, according to the terms of the opinion therein, whether
the machine in question is such a machine as is contem-
plated by said act, discloses certain incongruities in said
opinion and also certain inaccuracies in the application of
a well-establshed principle of construction, which, in view
of the importance of the interests affected, should be cor-
rected before the lapse of time renders it difficult to correct.
Section ten of the act of March 12, 1901 (Acts 1901, p. 565,
§1394 Burns 1908), provides: "If in any case two of the
judges of either division are of the opinion that a ruling
precedent of the Supreme Court is erroneous, the case, with
a written statement of the reasons for such opinion, shall
be transferred to the Supreme Court." And, of course,
it is the pleasure of the Supreme Court freely to act
upon such recommendations and adopt them when well
made. That part of the factory act particularly involved
is in terms as follows: "All vats, pans, saws, planers,
cogs, gearing, belting, shafting, set-screws and machinery of
every description therein shall be properly guarded, and no
person shall remove or make ineffective any safeguard
around or attached to any planer, saw, belting, shafting or
other machinery, or around any vat or pan, while the same
is in use." Acts 1899, p. 231, §9, §8029 Burns 1908.

The legislative intent is perfectly plain. It was to minimize the likelihood of injury from dangerous machinery. This intent was accurately declared in the case of

'1. *Laporte Carriage Co.* v. *Sullender, supra,* as follows: ·

"What evidently was intended or contemplated by the legislature was that those parts of the machinery which were dangerous to employes whose duties required them to work in the immediate vicinity of such dangerous machinery should be properly guarded, in order to minimize, as far as practicable, the perils or dangers attending their labor." And see *Glens Falls, etc., Co.* v. *Travelers Ins. Co.* (1900), 162 N. Y. 399, 56 N. E. 897.

The doctrine of *ejusdem generis* is that where a general word follows particular and specific words of the same nature as itself, it takes its meaning from them, and is

2. presumed to be restricted to the same genus as those words. Black, Interp. of Laws, p. 141; Maxwell, Interp. of Stat. (3d ed.), p. 469; Sedgwick, Stat. and Const. Law (2d ed.), p. 360.

The language here does not admit of the application of the *ejusdem generis* doctrine. The phrase, "and machinery of every description," cannot be limited by the prior

3. enumeration, for the reason that such enumeration is not an enumeration of machines at all—the genus of those words is not of the same nature as of "machinery of every description." A vat is not a machine, neither is a pan, nor a saw. Cogs, gearing, belting, shafting and set-screws are not machines, but may each or all enter into and be a part of various machines. Since no enumeration of machinery precedes the general terms, there is nothing to limit those terms, and they are broad enough to cover any machine that is dangerous to life or limb, and which, without impairing its utility, can be guarded. Analyzed in accordance with the standard rules of legal hermeneutics, the meaning of the statute could as well be expressed as fol-

lows: Machinery of every description therein, and all vats, pans, saws, planers, cogs, gearing, belting, shafting and set-screws shall be properly guarded.

The *ejusdem generis* doctrine, even if it were applicable, "is but a rule of construction to aid in ascertaining the meaning of the legislature, and does not warrant a court in confining the operation of a statute within narrower limits than was intended by the lawmakers. The general object of an act sometimes requires that the final general term shall not be restricted in meaning by its more specific predecessors." Black, Interp. of Laws, 143, quoting from *Willis* v. *Mabon* (1892), 48 Minn. 140, 50 N. W. 1110, 16 L. R. A. 281, 31 Am. St. 626. See, also, Sutherland, Stat. Constr., §279.

The legislative intent is perfectly clear and has been stated in the case of *Laporte Carriage Co.* v. *Sullender, supra,* to be, that "dangerous machinery should be properly guarded." Where the intent is so clear, no mere rule of construction can defeat it, even if, unlike the present one, it were applicable.

The particular words set out in the statute are, "vats, pans, saws, planers, cogs, gearing, belting, shafting, set-screws." The general words are, "machinery of every description." The genus of the general words is undoubtedly "machine,"—a mechanical device or combination of mechanical powers and devices to perform some function and produce a certain effect or result. *Corning* v. *Burden* (1853), 15 How. *252, 14 L. Ed. 683; *Green* v. *American Car, etc., Co.* (1904), 163 Ind. 135.

If the *ejusdem generis* doctrine could, for an instant, be considered in this connection, the genus of the enumerated articles, vats, pans, etc., would necessarily be "machine" also. An interesting and humorous situation at once develops. Is this a machine like a vat? Is it of the class designated as a pan? Is this machine of the character of a cog-

wheel? The unreasonableness of such situation is self-evident. In the case of *Laporte Carriage Co.* v. *Sullender, supra,* an emery belt was held not to "come within the term or word 'belting,' as employed in the statute." But if an emery belt is a "machine," it is the same kind of a machine as "belting;" if it is a "thing," it is of like character to "belting." Whether it is a "machine" or a "thing," it should have been held to be within the statute. If an emery belt does not come within the general words, it is difficult to conceive of any machine or thing which could possibly do so. It is the dangerous quality of machinery which the statute seeks to guard against, and it is because of that danger that "all other machinery" is brought within the scope of the statute. Whether the danger lies in a wheel-drop of a foundry *(Green* v. *American Car, etc., Co., supra),* in a dovetailing machine *(M. S. Huey Co.* v. *Johnston* [1905], 164 Ind. 489), in the bits of a shaper *(United States Furniture Co.* v. *Taschner* [1907], 40 Ind. App. 672), in the bits of a boring machine *(Buehner Chair Co.* v. *Feulner* [1905], 164 Ind. 368), in an emery belt used to polish metal parts of vehicles, or in the mangle of a laundry—should make no difference. They are all dangerous machines and should be guarded, provided, of course, the same can be done without impairing their utility. That the term "machinery of every description" was not used in a limited sense is shown not only by the language itself, and the absurdities to which an attempt practically to apply it when restricted leads, but also by the context, which provides that, "no person shall remove or make ineffective any safeguard around or attached to any planer, saw, belting, shafting or other machinery." If *ejusdem generis* is to be invoked as to one clause, it is equally applicable to the other, and, so applied, the removal of safeguards from dangerous machinery other than the class designated as "planers, saws, belting, or shafting" is not for-

bidden, a conclusion utterly at variance with the legislative purpose.

The act under consideration is expressive of the soundest public policy. That policy has been declared by

5. the legislature. The policy which leads to the enactment of such statutes should govern in their interpretation.

The case is therefore transferred to the Supreme Court, with the recommendation that *Laporte Carriage Co.*

6. v. *Sullender, supra,* be overruled or modified so that it may accord with the expressed legislative intent and the current of the decisions in Indiana.