## McNamara v. State of Indiana.

[No. 25,081.   Filed June 24, 1932.]

Charles E. Cox, Charles B. Welliver and Madison Welsh, for appellant.

Arthur L. Gilliom, Attorney-General, Edward J. Lennon, Jr., Deputy Attorney-General, William H. Remy and Ephraim Inman, for the State.

TRAVIS, J.—Appellant appeals from the judgment against him, which was rendered upon a verdict that he is guilty of the crime of blackmail, as defined by §2440 Burns 1926, Acts 1905 p. 584, ch. 169, §370. The question presented for decision is pleaded by the assigned error, predicated upon the action of the court overruling appellant's motion to quash the indictment. The objections to the indictment are that the facts stated in the indictment do not constitute a public offense, and that the indictment does not state the facts with sufficient certainty. The indictment, omitting the caption and indorsements, is as follows: "The Grand Jurors for the County of Marion and State of Indiana, upon their oaths, present that Ben Staggenborg, on or about the 15th day of November, A. D. 1923, at and in the County of Marion and State aforesaid, was then and there employed by Seth C. Niman and Miles T. Niman (a partnership) to perform certain work for the said Seth C. Niman and Miles T. Niman (a partnership) in connection with the installation of certain boilers in what is commonly known as the Elks Building, located in the

City of Indianapolis, Marion County and State of Indiana, that on or about the said 15th day of November, A. D. 1923, the said Ben Staggenborg did then and there engage in the work of assisting with the installation of said boilers in said Elks Building, located in the City of Indianapolis, Marion County and State aforesaid; that on or about the said 15th day of November, A. D. 1923, one John J. McNamara (who was then and there the Secretary and Business Agent of Bridge, Structural and Ornamental Iron Workers Local Union Number 22, located in the City of Indianapolis, County of Marion and State of Indiana, did then and there, to, and in the presence of said Ben Staggenborg, unlawfully, feloniously and verbally threaten to do injury to the person and property of said Ben Staggenborg with the unlawful and felonious intent to extort and gain from the said Ben Staggenborg certain pecuniary advantages, the exact nature of which said pecuniary advantages is to the Grand Jurors unknown for the benefit of him, the said John J. McNamara and third persons, whose names are to the Grand Jurors unknown, which said certain pecuniary advantages, the exact nature of which is to the Grand Jurors unknown, were then and there possessed by and under the control and disposition of the said Ben Staggenborg and with the further unlawful and felonious intent to compel the said Ben Staggenborg, the person so as aforesaid threatened, by means of said threats to do an act against his will, to-wit: to compel the said Ben Staggenborg to abandon his said employment with the said Seth C. Niman and the said Miles T. Niman (a partnership) against his will, with the intent aforesaid."

The question points to the allegation in the indictment, concerning the thing sought to be extorted, to-wit, a "certain pecuniary advantage, the exact nature of said pecuniary advantage is, to the Grand Jurors, un-

known," etc. The specific point, made to the first reason to quash, is that the thing to be extorted and gained by the defendant, pleaded in the language of the statute, to-wit, "pecuniary advantage," is contrary to the well-established rule that things comprehended by a general designation in a statute must be *ejusdem generis* to the particulars in the definition; and the point made to the second reason to quash is that the words of description are not sufficient to meet the constitutional requirement of §13 of the Bill of Rights of the Constitution. This rule—*ejusdem generis*—is particularly well stated by this court in the opinion of the case of *Miller* v. *State* (1889), 121 Ind. 294, 23 N. E. 94, as follows: "Where words of a particular description in a statute are followed by general words that are not so specific and limited, unless there be a clear manifestation of a contrary purpose, the general word or words are to be construed as applicable to persons or things, or cases of like kind, as are designated by the particular word or words."

The word "pecuniary" has reference to that which relates to money. (Bouvier's Law Dictionary.) It is more broadly defined to be that which consists of money; exacted or given in money; also, entailing a money penalty; as, a pecuniary penalty, reward or offense; and also that which pertains to pecuniary affairs or losses. (Webster's Dictionary.) It is defined, also, as that which is monetary; relating to money, consisting of money. (Black's Law Dictionary.) It has been judicially decided that a verbal promise to pay a debt in full is a "pecuniary" consideration within the meaning of a statute which declares any certificate of discharge in insolvency to be void, if the assent thereto of any creditor is procured by any pecuniary consideration. *Phelps* v. *Thomas* (1859), 72 Mass. (6 Gray) 327, 328. Standing alone, the words in the statute, "or any pecu-

niary advantage whatsoever," might refer to and include many things of a pecuniary nature which could not be designated as "money" or a "valuable security."

In construing a statute, a court will not only look to the particular words used to ascertain the intent of the Legislature, but will also consider the title of the act, which, in this case, is an absolute general statement, to-wit, "An act concerning public offenses," which gives no aid whatever, in construing the words, which define the act of blackmailing, presented by the question on appeal. The section of the statute, which defines this crime, must be construed solely with reference to its own language, and the decisions of the law in relation thereto, provided the court desires to be guided by precedent.

This rule—*ejusdem generis*—which concerns particularity in criminal pleading, and the limitation of construction of the statutory definitions of crimes, is well applied and illustrated by a long line of decided cases. *Brooks* v. *Cook* (1880), 44 Mich. 617, 7 N. W. 216, 38 Am. Rep. 282; *Reg.* v. *Cleworth* (1863), 4 B. & S. 927; *Peate* v. *Dicken* (1834), 1 C. M. & R. 422; *Ex parte Hill* (1827), 3 C. & P. 225; *Sandiman* v. *Breach* (1827), 7 B. & C. 96; *Clark* v. *Gaskarth* (1818), 8 Taunt. 431; *State* v. *Walsh* (1890), 43 Minn. 444, 445, 45 N. W. 721; 2 Lewis' Sutherland, Statutory Construction (2d ed.) §423.

But, for the general term in a statute to be *ejusdem generis* to the particulars therein, the particulars must be of the genera, and not of species. If the definition of the things forbidden are general, there is nothing to which *ejusdem generis* may apply. *Higler* v. *People* (1880), 44 Mich. 299, 6 N. W. 664, 38 Am. Rep. 267.

In the case before us, the words, "or any pecuniary advantage whatsoever," cannot apply to chattels, be-

cause chattels are not pecuniary, and besides chattels is a general term. The only things to which the phrase could be *ejusdem generis* are the words, "money" and "valuable security." Money has a well-defined meaning, expressed, both by judicial decision, and by the statute. §2216 Burns 1926. The section of the statute in relation to money is one of the sections in the same act and under the same title, which includes the section which defines the act under consideration. The particular things which shall pass as money are there defined. The definition exhausts the class so that there could be nothing *ejusdem generis* to the class. "Valuable security," used in the definition of the crime is general and not, in any sense, particular or specific. If, instead of the words "valuable security," certain valuable securities were named, then it might be said that any pecuniary advantage whatsoever must be *ejusdem generis* to the things named. From this reasoning, it must follow that a pecuniary advantage named in the statute is an advantage that is neither *ejusdem generis* to "money" nor to a "valuable security." It is neither currency, bank bills nor bank notes, and neither is such pecuniary advantage a bond nor a mortgage.

It is, therefore, held as to the first reason why the indictment should be quashed, that the words in the indictment, to-wit, "certain pecuniary advantages," are not *ejusdem generis* to the words of the statute, to-wit, chattel, money or valuable security. Concerning the second reason, pleaded to quash the indictment—that the indictment does not state facts with sufficient certainty—the rule is that the averments made must be such that will apprise the defendant of the character of the charge against him. The charge of the crime is insufficient in this respect to meet the requirements prescribed by rules of construction pronounced

by this court. §13 Bill of Rights; *Ridge* v. *State* (1923), 192 Ind. 639, 137 N. E. 758.

Appellant, under his proposition that the indictment is bad because of uncertainty based upon the allegation, to-wit, "certain pecuniary advantages, the exact nature of which said pecuniary advantages is to the grand jurors unknown," makes the points: (1) "If unknown, then the grand jury could not know that it was in fact a pecuniary advantage at all and hence could not indict"; and (2) "it is not one of those things that can be characterized in an indictment as unknown."

The thing intended by the perpetrator of the crime of blackmail to be extorted or gained is an essential element of this crime. The essential elements which go to make up a crime must be definitely pleaded.

Where the crime is defined in general terms, the indictment must specify the particular acts which were done by the accused. *State* v. *Metsker* (1908), 169 Ind. 555, 83 N. E. 241. The assertion that an essential element of a crime is unknown to the grand jury is tantamount to an attempt to plead a crime by omitting one of the essential elements necessary to complete the crime. Such a pleaded description is subject to a motion to quash. It has ever been the law that particularity of description in an indictment may be dispensed with, but there is a material difference between matters of description, such as a describing the kind of money stolen, and the essential elements which go to make up the criminal act. Matters merely of description may be stated in an indictment as unknown to the grand jury, but an essential element of the crime may not be so pleaded. *Riggs* v. *State* (1885), 104 Ind. 261, 262, 263, 264, 3 N. E. 886; *People* v. *Bogart* (1868), 36 Cal. 245; *People* v. *Taylor* (1846), 3 Denio (N. Y.) 91; Wharton, Criminal Law (7th ed.) p. 252, §290.

It must follow that the allegation of the thing sought

to be extorted or gained cannot be pleaded in the language of the statute where the statute is general, but the averment must descend to particulars, not necessarily to descriptive matter, which is purely evidentiary. *United States* v. *O'Sullivan* (1851), Fed. Cases, No. 15,974.

The finding of the court is that the thing alleged to have been extorted is not pleaded with sufficient certainty. The motion to quash the indictment ought to have been sustained. It is ordered that this cause be remitted to the Marion Criminal Court, and that the motion to quash the indictment be sustained.

Judgment reversed.

Martin, J., dissents.

### DISSENTING OPINION.

Martin, J.—The appellant was indicted under §2440 Burns 1926, which reads in part as follows:

"Whoever threatens to do any injury to the person or property of any one, with intent to extort or gain from such person any chattel, money, or valuable security or any pecuniary advantage whatsoever, or with any intent to compel the person threatened to do any act against his will, with the intent aforesaid is guilty of blackmailing."

The indictment charged that Ben Staggenborg was employed by Niman and Niman, partners, in the work of assisting with the installation of certain boilers in the Elks building in Indianapolis, and that appellant (who was business agent of an ironworker's union)—

"did then and there, to, and in the presence of said Ben Staggenborg, unlawfully, feloniously and verbally threaten to do injury to the person and property of said Ben Staggenborg with the unlawful and felonious intent to extort and gain from the said Ben Staggenborg certain pecuniary advantages, the exact nature of which said pecuniary

advantages is to the Grand Jury unknown for the benefit of him, the said John McNamara and third persons, whose names are to the Grand Jurors unknown, which said certain pecuniary advantages, the exact nature of which is to the Grand Jurors unknown, were then and there possessed by and under the control and disposition of the said Ben Staggenborg and with the further unlawful and felonious intent to compel the said Ben Staggenborg, the person so as aforesaid threatened, by means of said threats to do an act against his will, to-wit: to compel the said Ben Staggenborg to abandon his said employment with the said Seth C. Niman and the said Miles T. Niman (a partnership) against his will, with the intent aforesaid."

A discussion of the rule of *ejusdem generis* is of little or no value in this case. The phrase "any pecuniary advantage whatsoever" is of the same genus as "money or valuable security," although possibly not of the same genus as the word "chattel." But in this case regardless of the applicability of the doctrine of *ejusdem generis* the meaning of such phrase is the same and it should be held to include the right to work, of which right it is alleged Staggenborg was deprived.[1]

---

*Note 1.* The *ejusdem generis* rule is that where in a statute a general word follows particular and specific words of the same nature as itself, it takes its meaning from them and is presumed to be restricted to the same genus as those words. It is but a rule of construction to aid in ascertaining the meaning of the Legislature, and does not warrant a court in confining the operation of a statute within narrower limits than was intended by the lawmakers, *Pein* v. *Miznerr* (1908), 41 Ind. App. 255, 257, 83 N. E. 784, citing *Willis* v. *Mabon* (1892), 48 Minn. 140, 50 N. W. 1110, 16 L. R. A. 281, 31 Am. St. 626. The prevailing opinion in discussing this rule cites with approval a number of English cases, which by their absurd reasoning have served to lessen the value of the rule, thus: A statute naming "ox, cow, heifer, steer . . . or other cattle" did not include a "bull," *Ex Parte Hill* (1827), 3 C. & P. 225; a statute naming "tradesman, artificer, workman, laborer or other person whatsoever" did not include a "farmer" or a "driver of a stage coach," *Reg.* v. *Cleworth* (1863), 4 B. & S. 927; *Sandiman* v. *Breach* (1827), 7 B. & C. 96. The application of the rule has sometimes led to illogical and unsound conclusions, as in *Laporte Carriage Co.* v. *Sullender* (1905), 165 Ind. 290, 75 N. E. 277, See *Pein* v. *Miznerr*, *supra.*

This indictment properly charged the appellant, in the language of the statute, with threatening to do injury to the person and also to the property of Staggenborg with intent to extort from him the pecuniary advantage of his employment (the exact nature of which was charged as being unknown to the grand jury) and with intent to compel him to abandon his employment against his will. Employment or labor and the right to labor constitute property within the meaning of this statute and whatever deprives one of his right to labor deprives him of his property. See *People, ex rel.,* v. *Warden* (1911), 145 App. Div. 861, 130 N. Y. Supp. 698, 700. The loss of employment is an injury to a person's property, *State* v. *Kramer* (1921), 31 Del. 454, 115 Atl. 8, 11. The deprivation of such property is a pecuniary disadvantage within the terms of the statute alleged to be violated.

The Constitution provides (§13 Art. 1, Constitution, §65 Burns 1926), that "the accused shall have the right . . . to demand the nature and cause of accusation against him and to have a copy thereof." Under this constitutional provision an accused is entitled to have the gist of the offense or the material averments of the indictment clearly stated in direct and unmistakable terms so as to apprise him of the nature and character of the charge against him. *Kraft* v. *State* (1930), 202 Ind. 44, 171 N. E. 1; *Agar* v. *State* (1911), 176 Ind. 234, 94 N. E. 819; *Lane* v. *State* (1898), 151 Ind. 511, 51 N. E. 1056; *Brunaugh* v. *State* (1910), 173 Ind. 483, 90 N. E. 1019.

This certainty in alleging an element in a criminal charge need not be greater than in a civil action. *Allen* v. *State* (1915), 183 Ind. 37, 107 N. E. 471; *Lay* v. *State* (1895), 12 Ind. App. 362, 39 N. E. 768; *State* v. *McCormack* (1850), 2 Ind. 305; *McCool* v. *State* (1864), 23 Ind. 127. Strict formality is not required, but only

reasonable certainty to a common intent, *Musgrave* v. *State* (1892), 133 Ind. 297, 32 N. E. 855; *Lay* v. *State, supra,* that is such certainty as will fully inform the defendant of the particular charge he is required to meet. *Funk* v. *State* (1898), 149 Ind. 338, 49 N. E. 266; *State* v. *Ensley* (1912), 177 Ind. 483, 97 N. E. 113, Ann. Cas. 1914D 1306; *Barnhardt* v. *State* (1908), 171 Ind. 428, 86 N. E. 481; *Skelton* v. *State* (1909), 173 Ind. 462, 89 N. E. 860; 90 N. E. 897; as will enable the court and jury to distinctly understand what is to be tried, *Hinshaw* v. *State* (1919), 188 Ind. 447, 124 N. E. 458; *Mayhew* v. *State* (1920), 189 Ind. 545, 128 N. E. 599; *Brockway* v. *State* (1923), 192 Ind. 656, 138 N. E. 88, 26 A. L. R. 1338, and that the record may show for what the defendant has been put in jeopardy, *Whitney* v. *State* (1858), 10 Ind. 404; *Williams* v. *State* (1919), 188 Ind. 283, 123 N. E. 209.

It is usually sufficient to charge the offense in the language of the statute or in terms substantially equivalent thereto. *Wertheimer* v. *State* (1929),. 201 Ind. 572, 169 N. E. 40, 68 A. L. R. 178; *State* v. *Miller* (1884), 98 Ind. 70; *Betts* v. *State* (1884), 93 Ind. 375; *Benham* v. *State* (1888), 116 Ind. 112, 18 N. E. 454. An exception to this rule exists where the statutory definition of the crime is general and the particulars of the crime must be enumerated in order to meet the requirements above set out. Thus in *Johns* v. *State* (1902), 159 Ind. 413, 65 N. E. 287, 59 L. R. A. 789, a charge for bunco steering that the defendants by "duress and fraud" compelled another to part with money was held insufficient in failing to state the nature of the fraud and duress.

In the case at bar, as can be seen from the portion of the indictment quoted, the grand jury did charge particularly the means of the extortion by appellant. Appellant contends that there also must be a particular and more definite charge with reference to the thing

to be extorted. The gist of the crime of blackmailing is not the *thing* sought to be extorted, but is the *extortion*—the method by which the criminal seeks to extort the property of his victim. *Green* v. *State* (1901), 157 Ind. 101, 102, 60 N. E. 941. The thing sought to be extorted was the pecuniary advantages of Staggenborg's employment. The fact that the grand jury alleged "the exact nature" of such advantages was unknown to it does not invalidate the indictment.

Appellant further contends that the charge in the indictment, appellant did verbally "threaten to do injury to the person and property of the said Ben Staggenborg" is insufficient because the words which constituted such threat are not set out—that the allegation was an averment of the pleader's conclusion and not the facts constituting the threat. The precise words of the threat were not the gist of the offense and they need not be set out; it is enough if their substance is stated. *Glover* v. *People* (1903), 204 Ill. 170, 68 N. E. 464; *Commonwealth* v. *Moulton* (1871), 108 Mass. 307. The charge was not the allegation of a legal conclusion but of the act of the defendant and is sufficient without setting out the words used, *State* v. *O'Mally* (1878), 48 Iowa 501. The allegation of the fact, and not the evidence to support it, is necessary. The form of the language in which the threat was made is not material. An ingenious mind might convey threats by a variety of expressions without using any definite phraseology, yet they would be effective if sufficient to so impress the mind of the person threatened so as to accomplish the end in view. *State* v. *Blackington* (1913), 111 Me. 229, 88 Atl. 726.

Having arrived at the conclusion that the indictment was sufficient as against appellant's motion to quash— which conclusion is at variance with the prevailing opinion of the court—I have considered the other alleged errors presented by appellant.

One of the assignments is that the evidence is not sufficient to sustain the finding.  The evidence shows that Ben Staggenborg was helping to unload and place some heavy boilers in the Elks building in Indianapolis which was under construction.  The installation was being done by steamfitters, for whom Staggenborg was moving the boilers and there was a controversy between the ironworkers and the steamfitters as to which craft was entitled to do the work.  Appellant McNamara and a score of other ironworkers wielding iron jack handles and spud wrenches, with loud and profane threats of bodily injury (and assaults upon certain steamfitters who were working with Staggenborg), forcibly drove Staggenborg from the work and the building.  Over Staggenborg's protests McNamara knocked a jack from under the boiler which weighed several tons and it skidded against a 14 inch steel pilaster, one of the main supports of the building, and displaced it 4 or 5 inches.  He said: "I ought to knock the whole God damn building down."  McNamara during his tirade of profane abuse, threats and assaults told Staggenborg that he "would beat his brains out" and for him to "get out while he was all in one piece."  McNamara yelled to a group of ironworkers in the alley to get Staggenborg and his truck out of the alley and the gang followed him out of the alley and for a square down the street.  Staggenborg testified that he did not go back because he "was scared of getting knocked in the head and killed."  He quit the job and by reason thereof suffered a loss of $6 a day for a period of three weeks.  The evidence is sufficient to sustain the finding.

Appellant's counsel in their brief comment on what they term "the absurdity of the theory of the State" in seeking to uphold this conviction.  It is true that the conventional understanding of the term "blackmail"

is the extortion of money from a person under a threat of exposure of his crimes or immoralities, and without an examination of our statute one might well doubt that the criminal act performed by this appellant constituted him guilty of that crime. An examination of §2440 Burns 1926, however, shows that, in addition to defining acts which constitute the popular conception of "blackmail," language is used (quoted at the beginning of this opinion), which covers the acts here committed.

The appellant argues that the pecuniary advantage, if extorted, was not extorted from Staggenborg but from Staggenborg's employer. Such argument ignores the plainly proved facts, viz., that appellant and his associates threatened and terrorized Staggenborg out of his employment, his right to work and the pecuniary advantage thereof. To prove that appellant within the terms of this statute thus extorted this pecuniary advantage does not necessarily require proof that he gained such employment for himself. The evidence clearly shows, however, that the reason he threatened Staggenborg was in order that he might gain such employment for himself and his associates.

I have carefully examined all of appellant's propositions, points and authorities, and argument and find no error. I believe the judgment should be affirmed.