BACHMAN *v.* COLPAERT REALTY CORPORATION.

[No. 14,956. Filed March 29, 1935. Rehearing denied October 18, 1935. Transfer denied January 8, 1936.]

*Clifford V. Ducomb* and *Shively & Arnold,* for appellants.

*Jones, Obenchain & Butler,* for appellee.

DUDINE, P. J.—This is a consolidated cause instituted by appellees against appellants, as owners of Lot No. 186 in "Colonial Gardens," an addition in the city of

South Bend, Indiana, seeking to enjoin them from using said real estate in a manner contrary to restrictive covenants contained in a deed of conveyance of said real estate to appellants' predecessor in title, which deed of conveyance will hereinafter be referred to where the word "deed" is used, unless otherwise indicated.

The original complaint was filed by appellee Colpaert Realty Corporation, which corporation originally owned and platted said addition, and, at the time the suit was commenced, owned in fee simple 84 of the total of 430 lots in said addition, and held valuable interests in 96 other of said lots. This complaint alleged that appellants were violating said restrictive covenants in certain ways and manners, and it prayed a restraining order restraining appellants from violating said restrictive covenants in the ways and manners alleged in the complaint, and that upon a final hearing, appellants be perpetually enjoined from so violating said restrictive covenants.

A restraining order was issued. Thereafter the remaining appellees, owners in fee simple of certain lots in said addition, filed their joint complaint. Separate answers in general denial were filed by appellants to each of said complaints, and thereafter the causes were consolidated.

The consolidated cause was submitted to the court for trial without the intervention of a jury, and the court, upon request, made a special finding of facts, of which we quote or state the substance thereof as follows:

The corporate appellee entered into a contract for the purchase of certain real estate, which it platted and designated as Colonial Gardens, an addition to the city of South Bend, and duly recorded said plat on the 19th day of July, 1922.

The following is a true copy of so much of said plat as is pertinent to this appeal:

## "COLONIAL GARDENS

"The corporate plaintiff . . . acquired the land comprised in said plat for development as a restricted residential sub-division, and subsequent to the recording of said plat acquired fee simple title to all the lots therein described. Prior to January 2, 1925, corporate plaintiff had adopted a definite and general plan of development for the purpose of making the same a desirable residential area. As a part of said plan lots one to four, inclusive, and eighty-nine to ninety-five, inclusive, were set aside and designated for commercial purposes, and all other lots, except as herein otherwise found, in said subdivision, were set aside and designated to be sold under . . . restrictions . . . (which restrictions were to be similar to the restrictions contained in said deed.) Of such four hundred and thirty lots (in the addition), two hundred and fifty have been conveyed by the corporate plaintiff by warranty deeds, and ninety-six of said lots are held by purchasers under land contracts executed by the corporate plaintiff, and among said ninety-six lots is lot number one hundred and eighty-four. The corporate plaintiff is the owner in fee simple of . . . eighty-four of said lots, among which are lots two hundred seventy-one and three hundred and sixty-three . . . As a part of said plan, the minimum cost of dwellings was graduated from five thousand ($5,000.00) dollars on Mishawaka Avenue to two thousand ($2,000.00) dollars along the north part of the plat.

"More than three hundred and seventy-five dwellings are now in said area; no buildings have been erected on the lots in said subdivision excepting lots one to four, inclusive, and eighty-nine to ninety-six, inclusive, excepting dwellings and appurtenant buildings, such as private garages, other than as set out in these findings."

Lots numbered 182 to 184, inclusive, 271 to 276, inclusive, 361 to 372, inclusive, are now occupied by dwell-

ing houses conforming to the restrictions contained in said deed.

On January 2, 1925, the corporate plaintiff executed to appellants' predecessor in title said deed for Lot No. 186 in said addition. Said deed contained the following provisions:

"This conveyance is made upon the following conditions, restrictions and reservations, all of which shall be and remain in full force and effect for a period of 25 years from date, to wit:

"1. That the above grantees, their heirs or assigns shall not cause to be erected or placed on said lot any dwelling of the value of less than five thousand dollars.

"2. That the grantees, their heirs, administrators or assigns shall not use or permit to be used any building which may be erected on said premises for the purpose of a grocery store or any business or trade.

"3. That there shall be maintained a lawn space between the front line of said premises and the front foundation wall of any main building to be erected thereon of not less than forty feet from the nearest point of said foundation to said front property line and that no dwelling shall be erected less than five feet from either side of said lot.

"4. That any and all barns and outbuildings and garages when detached from dwelling must be erected on the rear of the lot and shall be built at the same time or after the residence has been erected on the front of said lot.

"5. That no building of any kind of description shall be moved on said premises. The grantors reserve the right to enforce the provisions of these restrictions and reservations or to prevent their violation by injunction or other legal proceedings and the failure to enforce the provisions of these restrictions and reservations herein

set forth shall in no event be deemed a waiver of the right to do so thereunder."

This deed was duly recorded January 19, 1925.

Appellants, as husband and wife, acquired title to said real estate on March 18, 1931, by warranty deed which was in the usual form except that it provided that the conveyance was made "subject to all building restrictions of record."

Prior to February 1, 1932, appellants built a driveway on the front of said lot and installed some oil pipes. On or about June 2, 1932, without the consent or knowledge of appellees, they began the construction of a filling station on said lot, the estimated cost of which station was $550.00. On June 4, 1932, they received a written notice from corporate appellee, ordering them to desist from such construction, but upon receiving such notice appellants put more men to work on the project and on June 6, 1932, when the restraining order was issued the side walls of the filling station were up and the skeleton of the roof was placed and one pump was installed.

"The building being erected by the defendants is not new or of new materials, but the defendants are using a fabricated steel and glass building which was formerly used on Sample Street in the city of South Bend as a filling station and which had been dismantled and had been in storage for some time prior to the acquisition of the same by the defendants."

"The erection of said filling station as herein set forth and the use of said premises of said lot one hundred and eighty-six in the manner intended by the defendants, will render the remaining lots in said subdivision other than lots 1 to 4 and 89 to 96 less desirable for residential purposes and will cause great and irreparable injury and pecuniary loss to the owners of said land, including the plaintiffs."

The development of said subdivision has been in sub-

stantial conformity with the plan therefor, but there have been some exceptions (which exceptions were stated in the court's finding).

"There has been no abandonment of the general plan upon which said subdivision was developed and the same is today a high-grade residential area."

"The restrictions contained . . . (in said deed) were intended by the corporate plaintiff for the benefit of all the lots in Colonial Gardens Addition."

By a zoning ordinance of the city of South Bend adopted in 1923 and amended in 1929, Lots 181 to 186, inclusive, were classified as part of a "Commercial District" in which buildings for commercial uses might be built.

The individual appellees reside upon and are the owners of lots numbered 273, 274, 275, 276, 367, and 369, respectively.

The court stated conclusions of law. The parts thereof which are pertinent to this appeal are as follows:

"2. The plaintiffs are entitled to an injunction against the defendants, and each of them, restraining them, and each of them, until January 2nd, 1950:

"(a) From erecting or constructing or placing on Lot 186, Colonial Gardens, an Addition to the City of South Bend, a gasoline filling station.

"(b) From using said lot, or any building on said lot thereon for the sale of gasoline, motor oil, automobile accessories and from using the same in the servicing of motor vehicles.

"(c) From committing any act on said premises in violation of the restrictions contained in the deed from the corporate plaintiff to John H. Wolfe et al., and recorded in Deed Record No. 186, Page 102, of the deed records of St. Joseph County, Indiana.

"3. The plaintiffs are entitled to the order of this court commanding the defendants, and each of them,

forthwith to remove from said Lot Numbered One Hundred Eighty-six (186) the filling station and appurtenant structure now thereon . . ."

Appellants took exceptions to each conclusion of law. Thereupon the court rendered judgment in accordance with the conclusions of law, and thereafter this appeal was perfected, the errors assigned being error in each the second and third conclusion of law.

"In this country real estate is an article of commerce, the uses to which it should be devoted are constantly changing as the business of the country increases, and as its new wants are developed; hence it is contrary to the well recognized business policy of the country to tie up real estate where the fee is conveyed, with restrictions and prohibitions as to its use; and hence, in the construction of deeds containing restrictions and prohibitions as to the use of property by a grantee, all doubts should, as a general rule, be resolved in favor of a free use of property and against restrictions. . . ." (See *American Cannel Coal Co.* v. *Indiana Cotton Mills* [1922], 78 Ind. App. 115, 134 N. E. 891.)

"Nevertheless proper building restrictions and other limitations on the use of property of a character which the law permits to be attached to land, in such a sense as to restrict the use of one parcel thereof in favor of another will be enforced in a proper case in courts of equity upon equitable grounds in favor of or against the party designed to be benefited or burdened thereby." Berry Restrictions on Use of Real Property, Sec. 37. See *Pierce* v. *St. Louis Union Trust Co.* (1925), 311 Mo. 262, 278 S. W. 398; *Sanborn* v. *McLean* (1925), 233 Mich. 227, 206 N. W. 496; Annotation 60 A. L. R. 1216. As to constitutionality and trend of late decisions of courts with reference to such provisions in city ordinances see *General Outdoor Ad-*

*vertising Co.* v. *City of Indianapolis* (1930), 202 Ind. 85, 172 N. E. 309, and *Euclid* v. *Amber Realty Co.* (1926), 272 U. S. 365, 47 Sup. Ct. 114, 71 L. Ed. 303.

Appellants' first proposition, as stated in their brief, is as follows: "The court erred in its second conclusion of law in holding that the appellants should be enjoined from erecting a filling station upon said lot, because there is no prohibition in the deed containing the restrictive covenants against the *erection of any kind of structure,* and no restriction against the erection and *use* of a filling station thereon, under the doctrine of *ejusdem generis.*"

"The doctrine of *ejusdem generis* is that where a general word follows particular and specific words of the same nature as itself, it takes the meaning from them, and is presumed to be restricted to the same genus as those words." *Pein* v. *Miznerr, by Next Friend* (1908), 41 Ind. App. 255, 257, 83 N. E. 784.

In that case this court, in construing an act of the legislature, said (p. 258), "The *ejusdem generis* doctrine, even if it were applicable, 'is but a rule of construction to aid in ascertaining the meaning of the legislature, and does not warrant a court in confining the operation of a statute within narrower limits than was intended by the lawmakers. The general object of an act sometimes requires that the final general term shall not be restricted in meaning by its more specific predecessors.'" See *Pierce* v. *St. Louis Union Trust Co., supra.*

An examination of the deed in its entirety in the light of the facts found by the court clearly discloses an intention on the part of the corporate appellee, the original owner, to carry out its preconceived and established plan of making said addition a desirable residential area. On authority of *Pein et al.* v. *Miznerr, supra,* we hold that even if the doctrine of *ejusdem generis*

were applicable here, the general object of the restrictions requires that the final general term "any trade or business" in paragraph two of the restrictions shall not be restricted in meaning by its more specific predecessor "grocery store," as appellants contend. (See *Boyleston* v. *Holmes* [1916], 276 Ill. 229, 114 N. E. 522.) We think that by said provision the parties intended and understood that the conduct of any and all kinds of business or trade would be barred.

Appellants contend that although the restrictions prohibited the *use of any building* which might be erected on said premises for any business or trade, they did not prohibit the *use of the lot itself,* exclusive of buildings which might be erected thereon, for any business or trade. We found no Indiana cases in point on this question. The Supreme Court of New York said in *Kitching* v. *Brown* (1905), 180 N. Y. 414, 427, 73 N. E. 241, 70 L. R. A. 742, "The primary rule of interpretation of such covenants is to gather the intention of the parties from their words, by reading, not simply a single clause of the agreement, but the entire context, and where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met." See *Easterbrook* v. *Hebrew Ladies' Orphans Society* (1912), 85 Conn. 289, 82 Atl. 561; Berry "Restrictions on Use of Real Property," Sec. 34, *et seq.; Pierce* v. *St. Louis Union Trust Co., supra; Brockmeyer* v. *Sanitary District* (1905), 118 Ill. App. 49. See 18 A. L. R. 452. We approve and adopt said statement of the Supreme Court of New York.

· The court having found in the case at bar that a general plan of development of the addition had been adopted by the corporate appellee more than six years before corporate appellee executed said deed, that the development thereof was in sub-

stantial conformity with said plan, and that there had been no abandonment of said plan of development, it must be presumed, in the absence of any fact found to the contrary, that said restrictions were inserted in said deed with a view of carrying out said general plan.

Use of lot 186 itself outside a building for gasoline and oil business would conflict with said general plan of development, as much as, if not more than, the use of a building on said lot for said purposes; therefore a construction of said restriction which would permit such use of the lot, outside a building, would deprive the restriction of all beneficial force. We must presume that the parties to the deed intended that the restriction be effective in carrying out said general plan of development. When we presume that, we must presume that they intended to prohibit the use of the lot, as well as any building on the lot, for any of the prohibited uses. *Pierce* v. *St. Louis Union Trust Co., supra; Holdeman* v. *Central States Fin. Corp.* (1928), 241 Mich. 604, 217 N. W. 764; *Baumert* v. *Malkin* (1923), 235 N. Y. 115, 139 N. E. 210.

Appellants also contend that "to be effectual as a restriction in favor of land in general in a subdivision, the general plan of building restrictions must be recited in the deed, and can not be left to parol," and cites *Hunter et al.* v. *Roman Catholic Bishop of Los Angeles et al.* (1932), 128 Cal. 90, 16 Pac. 2nd 1048, as authority therefor. Said case does support said contention, but appellant has not cited and we have not found a decision of a court of review of any jurisdiction except California which holds to that effect. There are no Indiana cases in point on that contention.

We think the rule of law announced in *Couch* v. *Southern Methodist University* (1927), (Tex.) 290 S. W. 256, 259, is a better rule of law, and that it is supported by the greater weight of authority. The rule is stated as follows in said case: "It may

be stated generally that, where a common grantor opens up a tract of land to be sold in lots and blocks, and before any lots are sold, inaugurates a general scheme of improvement for such entire tract intended to enhance the value of each lot, and each lot subsequently sold by such grantor, is made subject to such scheme of improvement, there is created and annexed to the entire tract what is termed a negative equitable easement, in which the several purchasers of lots have an interest, and between whom there exists mutuality of covenant and consideration." See *Wugwan* v. *Jusel* (1915), 270 Ill. 520, 110 N. E. 884; *Abbot* v. *Steegman* (1928), 263 Mass. 500, 161 N. E. 596; *Storey et al.* v. *Brush* (1926), 256 Mass. 101, 152 N. E. 225.

In accordance with said statement we hold that appellees hold a "negative equitable easement" on appellants' lot 186, and that the mere fact that appellants' title record did not show the general scheme of development, does not prevent appellees or either of them from enforcing compliance with said general scheme by appellants.

It is also contended that where a change of character in the neighborhood has taken place subsequent to the conveyance of real estate subject to restrictions in conformity with a preconceived general scheme of development of the neighborhood, the restrictions can no longer be enforced, and appellant argues that the adoption of the zoning ordinance which classified lot 186 as commercial territory should be given "grave consideration in determining whether a court of equity is justified in granting an injunction to enforce such restrictions within (commercial) zonal territory." We have found no Indiana cases in point on this question.

As was said in *Rombaner* v. *Compton Heights Christian Church* (1931), 328 Mo. 1, 40 S. W. (2d) 545, "No hard and fast rule can be laid down as to when changed

conditions have defeated the purpose of restrictions, but it can be safely asserted the changes must be so radical as practically to destroy the essential objects and purposes of the agreement . . ." This rule of law was recognized by this court in *Schwartz* v. *Holycross* (1925), 83 Ind. App. 658, 149 N. E. 699, 54 A. L. R. 815, 816.

In the case at bar the court found in effect that the changes in the area affected were not so radical as to practically destroy the essential objects and purposes of the restrictions. The fact that such an ordinance was adopted does not prevent the court from enforcing such restrictions where the court finds, as it found here, that the development of said subdivision had been in substantial conformity with the plan therefor, and there had been no abandonment of the general plan.

No reversible error having been shown, the judgment is affirmed.