**Loyd BURNETT, et al.,
Defendants-Appellants,**

v.

**Mary L. HECKELMAN,
Plaintiff-Appellee.**

**No. 1–483A107.**

Court of Appeals of Indiana,
First District.

Dec. 14, 1983.

J. Scott Waters, IV, Indianapolis, for defendants-appellants.

Anne Marie Sedwick, Sedwick & Sedwick, Sellersburg, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

In an action initiated by Mary Heckelman to have certain restrictive covenants pertaining to her property declared unenforceable, the Clark Superior Court granted judgment in her favor. Various adjoining landowners who had opposed Heckelman in the lower court proceedings now appeal.

We reverse.

## FACTS [1]

■ In June of 1955, Heckelman, together with her husband and his parents,[2] purchased five lots in the Beechwood Manor Subdivision in Clarksville, Indiana. While Mary and her husband originally intended to build several houses on these lots, none were ever erected and the lots remain vacant.

Heckelman's lots, numbers 5 through 9, together with the remaining 165 lots in the subdivision, are subject to certain restrictive covenants which run with the land.[3] Among other things, the restrictive covenants prohibited property owners from using their lots for commercial purposes. Consequently, no commercial structures have been erected on any of the 170 lots.

Since 1955, the area surrounding the subdivision has become highly commercialized by the erection of various restaurants, gasoline stations, and retail stores. According to the parties' stipulations, nearly fifty such establishments are now in operation within close proximity to the subdivision.

In addition to the changes occurring in the surrounding area, changes also occurred in the subdivision. Again, referring to the parties' stipulations, it appears as much as fifty feet of the nine lots facing State Road 131 was condemned by the State of Indiana in 1969 to facilitate the widening of the highway. All five of Heckelman's lots were affected by this condemnation.

Because of these changes, Heckelman believed her property was no longer suitable for residential purposes and accordingly, filed her action to have the restrictive covenants declared unenforceable. Rendering judgment in her favor, the trial court modified the restrictive covenants pertaining to Heckelman's lots to permit her to use the property for commercial purposes. Further, the trial court ordered Heckelman to grant all landowners in the subdivision a twenty foot easement across her rear property line. The court also directed Heckelman to erect a fence and plant trees along the entire length of the easement in order to create a barrier between her property and the balance of the subdivision.

Dissatisfied with this arrangement, the remaining property owners sought and were granted a stay of execution pending the outcome of this appeal.

## ISSUES

We believe the fundamental issue in the present case may be distilled into the following question:

Were the changes within the subdivision and the area surrounding it so radical in nature that the intended purpose of the restrictive covenants was defeated, thus justifying the trial court's decision to declare them unenforceable?

## DISCUSSION AND DECISION

Fundamentally, resolution of the instant case turns on the degree of change which has occurred within the Beechwood Manor Subdivision and the surrounding area since the adoption of the restrictive covenants in 1955. Neither party disputes the fact that changes have occurred, but they strongly disagree over the degree of those changes.

Despite the heavy commercialization of the area around the subdivision, the defendants contend its residential nature has been preserved. In support of their contention they cite the fact that none of the lots are used for commercial purposes. Consequently, they argue, the trial court's decision declaring the covenants unenforceable is contrary to law and the evidence presented at trial.

1. While the briefs in the present case are otherwise satisfactory, attention of counsel for both parties is directed to Indiana Rules of Procedure, Appellate Rule 8.3(A)(5). As we have repeatedly reminded appellate counsel, a summary of each witness' testimony does not constitute a narrative statement of the facts. *Miller v. State,* (1983) Ind.App., 449 N.E.2d 1119, 1120; *Elsperman v. Plump,* (1983) Ind.App., 443 N.E.2d 1206, 1206; *Moore v. State,* (1981) Ind.App., 428 N.E.2d 806, 807.

2. Mary is the sole survivor of these parties and is the only plaintiff.

3. These restrictive covenants were contained in the plat of the subdivision which was filed with the Clark County Recorder on April 11, 1955. Record at 41–45.

Heckelman, to the contrary, submits that the changes in the surrounding area, the state's condemnation of a portion of her property, and the deterioration of several adjacent properties has radically altered the residential character of the subdivision so that the restrictive covenants are no longer useful. Thus, in Heckelman's view, the trial court was justified in declaring the covenants unenforceable.

■ Restrictive covenants, in essence, are a form of express contract between a grantor and a grantee in which the latter agrees to refrain from using his property in a particular manner. *Cunningham v. Hiles,* (1979) Ind.App., 395 N.E.2d 851, 854; *Bob Layne Contractor, Inc. v. Buennagel,* (1973) 158 Ind.App. 43, 53, 301 N.E.2d 671, 678, *trans. denied* (1974); *Vierk v. Ritenour,* (1961) 131 Ind.App. 547, 555, 172 N.E.2d 679, 683. Generally, their purpose is to enhance and maintain the value of property by controlling the use of adjacent lands. *Cunningham,* 395 N.E.2d at 854; *Bob Layne,* 158 Ind.App. at 53, 301 N.E.2d at 678. However, restrictive covenants are not favored in the law. *Cunningham,* 395 N.E.2d at 854; *Bob Layne,* 158 Ind.App. at 53, 301 N.E.2d 678; *Bachman v. Colpaert Realty Corp.,* (1935) 101 Ind.App. 306, 314, 194 N.E. 783, 787 *trans. denied* (1936). Thus, if a covenant is ambiguous or in some manner violative of public policy, it may not be sustained. *Cunningham,* 395 N.E.2d at 854; *Bob Layne,* 158 Ind.App. at 53, 301 N.E.2d at 678. Furthermore, if the use of the subject property and its surrounding area has so radically changed from what was originally envisioned that the purpose of the covenants can no longer be attained, they may be declared unenforceable. *Cunningham,* 395 N.E.2d at 854; *Bob Layne,* 158 Ind.App. at 54, 301 N.E.2d at 678; *Bachman,* 101 Ind.App. at 319–20, 194 N.E. at 789. However, as other courts have noted, the degree of change "must be so great as clearly to neutralize the benefits of the restriction to such an extent as to defeat the purpose of the covenant." *Franklin v. Moats,* (1954) Ky., 273 S.W.2d 812, 814.

■ In determining whether such an extreme change has occurred there are no "hard-and-fast rule[s]" appropriate in every case. *Hecht v. Stephens,* (1970) 204 Kan. 559, 563, 464 P.2d 258, 262. Rather, "[e]ach case must rest on the equities of the situation as it is presented," and equitable relief from the enforcement of restrictive covenants is warranted only when the change in conditions is "so great or radical as to neutralize the benefits of the restriction and destroy its purpose." *Id.*

■ Our review of the trial court's determination in the present case is, nevertheless, one of limited scope. As an appellate tribunal, we may neither reweigh the evidence nor judge the credibility of witnesses. *Smith v. Union State Bank,* (1983) Ind.App., 452 N.E.2d 1059, 1062 (rehearing pending); *James v. Brink & Erb, Inc.,* (1983) Ind.App., 452 N.E.2d 414, 416; *Trinity Lutheran Church, Inc. of Evansville, Indiana v. Miller,* (1983) Ind.App., 451 N.E.2d 1099, 1102, *trans. denied.* Moreover, because the present case is one in equity, and was tried before the court and not a jury, its decision will be reversed only if clearly erroneous. *Merchants National Bank & Trust Co. of Indianapolis v. H.L.C. Enterprises,* (1982) Ind.App., 441 N.E.2d 509, 511; *Young v. Bryan,* (1977) 178 Ind.App. 702, 705, 368 N.E.2d 1, 2, *trans. denied; City of Angola v. Hulbert,* (1959) 130 Ind.App. 97, 103, 162 N.E.2d 324, 327; *Metrailer v. Bishop,* (1959) 130 Ind.App. 77, 81, 162 N.E.2d 94, 96; Indiana Rules of Procedure, Trial Rule 52(A). Such a finding will be made by this court when the evidence is uncontradicted and supports no reasonable inferences in favor of the decision, *Merchants National Bank,* 441 N.E.2d at 511–12; *Masson Cheese Corp. v. Valley Lea Dairies, Inc.,* (1980) Ind.App., 411 N.E.2d 716, 718, *trans. denied* (1981), or, even when there is evidence supportive of the judgment if our review of the record leaves us with a "definite and firm conviction that a mistake has been made." *Merchants National Bank,* 441 N.E.2d at 512; *Moore v. Moriarty,* (1981) Ind.App., 415 N.E.2d 779, 781; *Arnold v. Dirrim,* (1979) Ind.App., 398 N.E.2d 442, 446; *Young,* 178

Ind.App. at 705, 368 N.E.2d at 2. Our review leaves us with such a conviction.

In the instant case, aside from the changes in the property adjacent to the subdivision, Heckelman directs our attention to certain changes within the subdivision itself which she believes have altered its residential character. These changes consist of: (1) the condemnation of as much as fifty feet of the nine lots facing State Road 131 (affecting all five of Heckelman's lots); (2) the general deterioration of the four homes facing the highway; (3) the fact that one of those homes was boarded up at the time of the trial;[4] and (4) the fact that the nine lots would have greater monetary value if used for commercial purposes.[5] According to Heckelman, when these changes are viewed in light of the surrounding commercialization, the residential nature of the subdivision has been radically altered; to the extent, Heckelman argues, that the underlying purpose of the restrictive covenants has been defeated.

The argument advanced by Heckelman parallels that addressed by this court in *Cunningham.* Therein, when a subdivision lot owner attempted to erect and operate a retail store on his property, various adjoining lot owners sought enforcement of certain restrictive covenants which limited the use of subdivision lots to residential purposes. Like Heckelman, the defendant argued there had been radical changes in the subdivision and adjacent property which defeated the purpose of the covenants and thus, made their enforcement inequitable. As evidence of those changes the defendant cited the following facts: an office building had been erected on adjacent land and protruded more than 100 feet into the subdivision; traffic in and around the subdivision had increased dramatically; and finally, because of the subdivision's proximity to a major highway, lots located near the thoroughfare failed to attract residential buyers.

Reversing the trial court, we held these changes insufficient to warrant a finding that a radical change had occurred and that the purpose of the covenants had been defeated.

Finding the protrusion of the office building and increased traffic within the subdivision to be insignificant, central to the present case we held:

"[W]e conclude that changes in an area surrounding an area protected by a restrictive covenant should be considered in the determination of the covenant's enforceability when these changes have significantly affected the residential character of the subdivision. At the same time, we conclude that the weight attributed to these changes should not be as great as that accorded changes which have occurred within the restricted area.

. . . .

[Thus,] [w]hile the increase of traffic on U.S. 30 has unfortunately diminished the residential value of some adjacent subdivision tracts, there is no evidence to indicate that the increased traffic load has affected the residential nature of life *within* Lincoln Knolls Estates. Consequently, the evidence presented does not reveal that the changes which have occurred within and around the subdivision are so radical in nature that the purpose of the restrictive covenant has been defeated."

*Id.,* 395 N.E.2d at 855–56 (emphasis original, citations omitted).

Likewise, in the instant case, it is unfortunate the commercialization near and the increased traffic on State Road 131 has rendered Heckelman's lots less valuable for residential purposes than they would be if put to a commercial use. However, as has been noted, "[t]here is always a line or point where commercial and residential districts must join." *Franklin,* 273 S.W.2d at 814. Unfortunately for Heckelman, her lots are

---

4. The record reveals, however, the home was habitable.

5. Heckelman's expert witness, Phil Banawitz, testified the lots had a residential value of ap-

proximately $5,000 per lot, but that their value and marketability would be greater if used for commercial purposes. Record at 203.

close to that line. Nevertheless, we do not believe, in light of *Cunningham,* that a mere diminution in value is sufficient justification for declaring restrictive covenants unenforceable.[6] *See also Osborne v. Hewitt,* (1960) Ky., 335 S.W.2d 922, 924; *Hodgkins v. Pickett,* (1961) Tex.Civ.App., 344 S.W.2d 461, 462. Moreover, there is no evidence this diminution in value has altered the "residential nature of life *within*" the subdivision, *Cunningham,* 395 N.E.2d at 856 (emphasis original), or made continued enforcement of the covenants meaningless. To the contrary, the evidence clearly indicates the subdivision has maintained its residential character since its formation in 1955 and will continue to do so if the covenants are sustained.

Nor are we convinced the state's condemnation of a portion of Heckelman's lots constituted a radical change within the subdivision itself. True, the size of her lots was diminished. But as the record reveals, the other lots abutting the highway also experienced similar reductions in size, yet continue to be used for residential purposes. Put simply, such changes, without more, do not constitute a radical change within a subdivision. *See Burden v. Lobdell,* (1968) 93 Ill.App.2d 476, 235 N.E.2d 660.

We are not unsympathetic to Heckelman's plight. However, as she acknowledges, the lots were purchased with full knowledge of the covenants and their import with respect to her rights as well as the rights of other lot owners. To permit Heckelman to ignore the covenants now that her property could be more profitably used for commercial purposes would certainly be to her benefit. It would, however, be to the detriment of the other lot owners who purchased their property in reliance upon the restrictive covenants, and who, in light of the absence of any change within the subdivision, have every right to expect it will retain its residential character.

Furthermore, from the evidence in the record it cannot be said the changes which have occurred were "so radical in nature that the purpose of the covenant—to maintain the residential character of the subdivision—is no longer feasible." *Cunningham,* 395 N.E.2d at 854. Thus, the criteria established in *Cunningham* for declaring restrictive covenants unenforceable have not been met. The trial court's decision was, therefore, clearly erroneous, *Merchants National Bank,* 441 N.E.2d at 511–12, and we are compelled to reverse.

Reversed.

ROBERTSON, P.J., and NEAL, J., concur.

**6.** This is especially true in view of the admonition in *Cunningham* that more weight should be accorded changes within a protected area than changes occurring in the surrounding area. In the instant case, there were virtually no ascertainable changes within the subdivision, only changes in the surrounding area. Furthermore, there is no evidence to support a finding that these changes have "significantly affected the residential character of the subdivision." *Cunningham,* 395 N.E.2d at 855. Thus, it is clear the trial court misapplied *Cunningham.*