AMERICAN CANNEL COAL COMPANY *v.* INDIANA COTTON MILLS.

[No. 11,120.   Filed March 31, 1922.]

1. COVENANTS.—*Restrictive Covenants.—Enforcement.*—Restrictions on the use of land conveyed in fee simple are looked upon with disfavor by the courts, and where there is an attempt to impose such restrictions they must clearly appear or they will not be enforced.   p. 119.

2. COVENANTS.—*Covenant Restricting Use of Land.—Enforcement.—Conflicting Equities.*—Where land was conveyed to a cotton mill company in consideration of the erection of a cotton factory with an appendage on part of the premises and subject to the restriction that an area 195 feet in width extending from the front of the main factory building to a certain street to be left open for a public promenade, the equities in favor of the grantee which built its factory 600 feet from the street and for 69 years complied with the covenant, but which desired to build an addition to its factory upon the ground reserved for the promenade, *held* stronger than the equities of grantor's assignee, which, so far as appeared, did not own or occupy any property in the vicinity and did not desire to use the promenade or any part of the property restricted, nor claim any injury, present or prospective, as a result of the construction of the building.   p. 120.

3. COVENANTS.—*Restrictive Covenants.—Enforcement.—Conveyance of Land with Building Restrictions.*—Where land was conveyed to a cotton mill company in consideration of the erection of an extensive cotton factory on part of the premises and subject to a restrictive covenant requiring an area 195 feet in width to be left open for a promenade, the covenant could be enforced so long as the grantor or any one claiming under it owned any of the original abutting or contiguous land, but when such grantor or one claiming under it ceased to hold such contiguous land, the covenant became personal, and equity would not enjoin a violation thereof in favor of the assignee of the covenantee or against the assignee of the covenantor.   p. 122.

116    APPELLATE COURT OF INDIANA,

American, etc., Coal Co. v. Indiana Cotton Mills—78 Ind. App. 115.

4. COVENANTS.—*Covenant Restricting Use of Land.*—*Enforcement.*—*Substantial Compliance.*—Where a deed executed in 1849 in consideration of the erection by the grantee of a cotton factory on the premises conveyed required an area of a specified width, extending from the front of the main factory building to a street, to be left open for a public promenade, observance of the covenant for more than 69 years *held* to be a substantial compliance therewith and the cotton mill no longer restricted to the use of its original site, in view of the growth of the country and the increase of industrial and manufacturing enterprises. p. 123.

From Perry Circuit Court; *Fred A. Heuring*, Judge.

Action by the American Cannel Coal Company against the Indiana Cotton Mills. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Robinson & Stilwell,* for appellant.
*Trabue, Doolan, Helm & Helm,* for appellee.

NICHOLS, J.—Action by appellant against appellee to enjoin appellee from erecting a building upon a described tract of land and for a mandatory injunction requiring appellee to remove therefrom so much of said building as had theretofore been erected on such real estate.

The amended complaint is in one paragraph to which appellee's demurrer for want of facts was sustained. Appellant failed and refused to plead further and judgment was rendered on demurrer. The court's ruling on demurrer is the only error assigned. The substance of the complaint is: That on and prior to February 1, 1849, there was existing in the State of Indiana a private corporation known as the American Cannel Coal Company. Said coal company was incorporated under the act of the general assembly of the State of Indiana, approved February 7, 1837, and was thereby constituted a corporation for the term of fifty years from February 7, 1837. On February 1, 1849, said coal company was the owner in fee simple with other real estate in

Perry county, Indiana, of ten certain lots designated on the revised plat of the town of Cannelton. Said town was at said time a prosperous incorporated town situated on the north bank of the Ohio river in Perry county, Indiana. Immediately along the river bank in said town there was a strip of ground used for a wharf or landing place. Immediately adjacent to said wharf or landing place and running parallel with said river there was a public street, known as Front street. Said real estate above described abutted on said street. On said February 1, 1849, the said coal company conveyed said real estate to said Cannelton Cotton Mills by warranty deed, which deed contained the following covenant:

"The American Cannel Coal Company for themselves, their successors, assigns and present lessee James Boyd shall have the right of way over a part of said out lot for a railway and cart road from the coal banks to the Ohio River, said roads together not to occupy more than forty feet in width and to run in nearly or quite a straight line from the outlet or discharging point of said coal bank to the Ohio River at the inclined plane where coal is now shipped, said roads entering out lot about 160 feet from its northerly corner, and running west a few degrees south until they pass out of said lot about two hundred and fifty feet from said northerly corner, and it is further understood that it is a part of the consideration of this conveyance that an area of at least 195 feet in width of the lots above conveyed from the front of the main factory building including and extending to the Front street on the river shall always be left (open) for a (public) promenade, to be however, always under the control of said Cotton Mill Company and improved and protected in such manner as they shall deem advisable."

At and prior to the time of said conveyance said Cannelton Cotton Mills had arranged to erect on said real

estate a main factory building, for the purpose of carrying on its business of manufacturing cotton therein, and within one year said Cannelton Cotton Mills did erect thereon a main factory, as contemplated by it at the time it received said conveyance; that said main factory was located facing the Front street facing on the river 600 feet distant therefrom and so as to leave vacant and not built upon an area of 195 feet in width and extending 600 feet from said street to the front of said main factory, and 195 feet in width as contemplated in said deed. Appellee has succeeded to all of the rights of said Cannelton Cotton Mills, and is now the owner and in possession of said real estate subject to said condition and reservation contained in said deed, and took title with full knowledge of said condition and reservation.

The charter of said coal company afterwards expired by reason of the expiration of the time for which it was incorporated, but its business never was liquidated in any way. All of its property passed by operation of law to its stockholders, who, August 22, 1905, sold and by their deed conveyed to appellant herein all of the property and assets of said coal company including its interest and title in and to said condition and reservation contained in said deed to said Cannelton Cotton Mills, and appellant is now the owner and holder of the same.

In July, 1918, and before appellee commenced the erection of any building on said real estate appellant caused to be served a notice on appellee not to encroach on said real estate, nor to begin the erection of a building thereon, nor to use it in any way other than contemplated in the reservation. From the time of the execution of said deed up to within ninety days of the filing of this action said Cannelton Cotton Mills and appellee herein its successor in interest, observed and lived

NOVEMBER TERM, 1921.          119

American, etc., Coal Co. *v.* Indiana Cotton Mills—78 Ind. App. 115.

up to said condition and reservation, but within the last ninety days appellee in violation of said condition and reservation and in disregard of said notice aforesaid, entered upon said area so reserved for a promenade and commenced the work of erecting a re-enforced concrete building thereon 100 feet by 260 feet in size in which it proposes to carry on its said business, and if it is permitted to finish and complete said building it will obstruct said area and will destroy it, for the purposes of a promenade. Said town of Cannelton is now a city. This appellant owns real estate in said city and is a taxpayer thereof.

Appellant prays that appellee may be enjoined and restrained from the further erection of said building on said area so reserved in said deed; that appellant may have a mandatory injunction compelling the removal from said area of so much of said building as may be already erected and for other proper relief.

The clause of the deed that is in controversy reads as follows: "And it is further understood that it is a part of the consideration of this conveyance that 1. an area of at least one hundred and ninety-five (195) feet in width of the lots above conveyed from the front of the main factory building and extending to the Front street on the river shall always be left for a promenade to be, however, always under the control of said Cotton Mill Company, and improved and protected in such a manner as they shall deem advisable." Appellant says that this clause is not a condition subsequent, it is not a condition, but that it is a covenant—a negative covenant restricting the use of lands. Appellee agrees with appellant's contention, and the court is in harmony therewith. We shall therefore consider it as a negative or restrictive covenant. Restrictions upon the use of land where the same is conveyed in fee simple are looked upon with disfavor by the courts

and where they are attempted, they must clearly appear or they will not be enforced. The rule is thus aptly expressed in *Casterton* v. *Plotkin* (1915), 188 Mich. 333, 154 N. W. 151: "Restrictions in deeds will be construed strictly against the grantors and those claiming to enforce them, and all doubts resolved in favor of the free use of the property."

In *Van Duyn* v. *Chase & Co.* (1910), 149 Iowa 222, 128 N. W. 300, the court says: "Moreover, it is not to be overlooked that the law favors the utmost freedom in dealing with real property. It is recognized as an article of commerce. As new wants develop and business increases and expands, the uses to which devoted are constantly changing. To tie up realty with restrictions and prohibitions, where the fee is conveyed, is opposed to the settled business policy of the country; and for this reason, in construing deeds containing restrictions and prohibitions as to the use, doubts are to be resolved in favor of the free use of the property." In the consideration of this case we shall be governed by these principles.

A careful examination of appellant's complaint discloses no injury, present or prospective, that it claims it will suffer by the construction of the building, the erection of which it seeks to enjoin. It does not aver that it owns or occupies any property in the immediate vicinity that will be affected thereby. It does not aver that it desires to use the promenade, or any other part of the property the use of which is restricted by the covenant. We are wholly unable from the complaint to discover any motive for its action unless we may say that it seems to assert in the language of English drama: "I will have my bond." We therefore proceed to inquire as to what is in the bond, in this case, "What is in the deed?" The consideration therefor was that the Cannelton Cotton Mill

would erect an extensive cotton factory with its appendage upon part of the premises involved, and pay one dollar. No time is fixed within which the factory is to be erected, nor was there a definite place fixed for its location. We note however, that it was to be an extensive factory with appendage. Webster's dictionary defines extensive as meaning primarily "Extended widely in space, time or scope; great; wide and secondarily as capable of being extended." Appendage is defined by the same author as "anything appended; a subordinate addition or adjunct." And append is defined as "to add; or attach."

The complaint avers that the grantee in the deed had arranged to erect a main factory building, and that within one year it did erect such a building, but there is nothing in the complaint that indicates that it was an extensive building such as it was authorized to erect under the conditions of the deed. If, when it had finished this building, it had exhausted its rights, and could not enlarge, then it was not a building which was capable of being extended. For aught that appears the building now contemplated may be the appendage mentioned in the deed. Surely it was not contemplated by the parties at the time that the deed was made that the country would not further expand, that there would be no growth in commercial affairs, and that, as the years go by, there would be no occasion for greater operation of such mill industry. The words of the deed seem rather to contemplate a growth of the industry to larger quarters in keeping with surrounding commercial conditions. To so hold as to prevent appellee from enlarging its plant to meet present commercial conditions and requirements, of necessity inflicts upon appellee a substantial injury. To avoid this if possible, appellee is certainly entitled to equitable consideration. If appellant will suffer any injury by the construction

of the building, it has failed to disclose it. If it has any equity, it is intangible under the averments of its complaint. This proceeding is in equity, and equitable principles must prevail. Conceding that appellant may have some equity, though it is intangible in the averments of the complaint, the equities of appellee are so manifest and so strong that the maxim that where the respective equities are not equal, the stronger or more meritorious one will prevail regardless of which accrued first in order of time, applies forcefully under the circumstances of this case as revealed by the complaint. 21 C. J. 210; Pomeroy, Equity Jurisp. (3d ed.) §§400, 413-15; *Star Brewery Co.* v. *Primas* (1896), 163 Ill. 652, 45 N. E. 145; *Ewertsen* v. *Gerstenberg* (1909), 186 Ill. 344, 57 N. E. 1051, 51 L. R. A. 310; *Page* v. *Murray* (1873), 46 N. J. Eq. 325, 19 Atl. 11.

As above suggested, it does not appear by the complaint that appellant or any one claiming under it owns any property in the immediate vicinity of the building being constructed, or that it has any personal interest or right that is being transgressed, or that it will suffer any damage by reason of the construction of the building. So long as the grantor in the deed containing the covenant, or any one claiming under it, owned any of the original abutting or contiguous land such owner could enforce the covenant, but when such grantor or one claiming under it ceases to hold such contiguous land, the covenant becomes personal and equity will not enjoin a violation thereof in favor of the assignee of the covenantee or against the assignee of the covenantor. *Graves* v. *Deterling* (1890), 120 N. Y. 447, 24 N. E. 655; *Los Angeles University* v. *Swarth* (1901), 107 Fed. 798, 46 C. C. A. 647, 54 L. R. A. 262; *Formby* v. *Barker* (1903), 2 Ch. 539; *Taylor* v. *Owen* (1830), 2 Blackf. 301, 20 Am. Dec. 115.

The deed containing the covenant here involved was executed in February, 1849, and it is not claimed that there was any attempted violation of such covenant until in July, 1918, a period of more than sixty-nine years, during which time history records the wonderful growth of the country, change in commercial conditions, and the phenomenal increase of industrial and manufacturing enterprises. To hold, in view of this development, that the parties to the deed intended after these years to hamper the cotton mill to its original installation is to hold that they were wholly without vision. We hold that an observance of the covenant under the circumstances for more than sixty-nine years was. a substantial compliance therewith. *Hunt* v. *Beeson* (1862), 18 Ind. 380; *Jefferson, etc., R. Co.* v. *Barbour* (1883), 89 Ind. 375; *Sumner* v. *Darnell* (1890), 128 Ind. 38, 27 N. E. 162, 13 L. R. A. 173; *Sheets* v. *Vandalia R. Co.* (1920), 74 Ind. App. 597, 127 N. E. 609.

Other reasons are presented to justify the trial court in sustaining the demurrer to the complaint, but the foregoing are sufficient to warrant us in holding that the court did not err in its ruling. The judgment is affirmed.