BOB LAYNE CONTRACTOR, INC. *v.* DONALD E. BUENNAGEL AND JOANNE M. BUENNAGEL, JOHN E. JILBERT AND MARY H. JILBERT, EDWIN L. BIGGERSTAFF AND IDA ANNE BIGGERSTAFF, BRUCE D. BEAM AND BEVERLY J. BEAM, WELKER H. BISHOP, JR., AND MARY LOUISE BISHOP, DONALD E. NELSON AND MARCELLA D. NELSON, THOMAS A. MINNICK AND ELLENORA MIN-

NICK, PAUL W. PARKINSON AND NANCY K. PARKINSON, ROBERT L. HURST AND ELLEN L. HURST, ESTEL MONROE CHESTNUT AND ANITA E. CHESTNUT, EVERETT S. MCCLELLAND AND JULIA C. MCCLELLAND; ON THEIR BEHALF AND ON BEHALF OF OTHER PROPERTY OWNERS IN LAYNE CREST, AN ADDITION OF THE CITY OF MUNCIE, INDIANA.

[No. 272A60. Filed October 4, 1973. Rehearing denied November 9, 1973. Transfer denied February 26, 1974.]

*Estabrook, Finn & McKee,* of Dayton, Ohio, *Slagle & Shirey,* of Muncie, for appellant.

*Frank E. Gilkison, Kelly N. Stanley, White, Haymond, Pierce, Beasley & Gilkison,* of Muncie, for appellees.

## CASE SUMMARY

BUCHANAN, P.J.—This is an appeal by defendant-appellant Bob Layne Contractor, Inc. (Layne) from a permanent injunction granted plaintiffs-appellees Donald R. Buennagel, et al., (Buennagel) on their Complaint to enjoin violation of restrictive covenants upon lots in a subdivision originally owned and platted by Layne.

We affirm.

## FACTS

The facts and evidence most favorable to Buennagel and the judgment of the trial court are:

In 1960, Layne owned a tract of land which he platted into approximately 207 lots and developed into a subdivision known as "Layne Crest Addition" near Muncie, Indiana of which approximately one hundred thirty-five lots have been sold.

On May 4, 1960, Layne recorded the plat of the subdivision together with covenants restricting the use of the lots in the subdivision to "residential purposes" (single family residences). These restrictive covenants applied to "each and every lot in said Addition . . ." and were to run with the land and to be binding on all parties and all persons claiming under them for a period of twenty-five years, renewable automatically for successive periods of ten years unless an instru-

ment signed by a majority of the owners of the lots expressed an agreement to change the covenants in whole or in part. The restrictive covenants also provided for enforcement of violations of the covenants by injunction if no adequate legal remedy existed.

Buennagel and the other plaintiff-appellees are the owners of eleven lots in Layne Crest subject to the restrictive covenants and are members of the Northwest Citizens Association (the Association) formed to oppose rezoning of part of the subdivision by Layne. The only use of lots in this subdivision has been for single family residences.

Prior to the platting and development of Layne Crest by Layne, no road existed on the northern boundary of Layne Crest. However, during the mid-1960's plans were revealed for the development of a four-lane freeway along the northern boundary of Layne Crest.

Recognizing that the existence of a four-lane freeway would render a substantial number of lots at the north end of the subdivision more suitable for commercial than residential development, Layne initiated a proceeding in the Delaware Circuit Court entitled, "Petition to Vacate Part of Plat of Layne Crest Addition in the City of Muncie, Indiana, and Certain Streets Therein" in January of 1967 (the Vacation Suit) seeking to vacate this northern group of lots (the Subject Property) from the Layne Crest Addition. It contained no reference to the restrictive covenants. The "City of Muncie, Indiana, and the Citizens Thereof" were named defendants.

Statutory notice pursuant to Ind. Ann. Stat. § 8-909 (Burns 1963) was given to the "City of Muncie, Indiana and The Citizens Thereof." On March 1 and March 8, 1967 notice of the filing of this Petition was published in The Muncie Star and the exact lot numbers of the subject property to be vacated were described in this notice. These published notices made no reference to the restrictive covenants.

None of the plaintiffs in this action were named as defendants in the Vacation Suit nor were they given personal notice of the Vacation Suit. No attempt was made subsequent to filing of the Vacation Suit to seek an agreement by a majority of the lot owners to nullify the restrictions as provided in the covenants.

The City of Muncie filed an Answer to the Petition, and the Muncie Water Works Company and the Indiana and Michigan Electric Company filed Remonstrances.

On March 23, 1967, a judgment was entered by the Delaware Circuit Court vacating the Subject Property "as a part of the plat of . . ." the Layne Crest subdivision, again, with no reference to the restrictive covenants.

On May 4, 1967 (still within the time allowed for an appeal from the Vacation Suit), Buennagel and members of the Association hired the attorney who represented the remonstrating parties in the Vacation Suit to investigate Layne's activities and the effect of the Vacation Suit.

On September 7, 1967, Layne obtained approval from the Muncie Planning Commission to rezone the Subject Property for commercial use. This approval, however, was later overruled by the Muncie City Council.

On January 16, 1968, Buennagel and the Association met and agreed to file a suit seeking to enjoin Layne's violation of the restrictive covenants (the Injunction Suit). This action was filed in Superior Court No. 2 of Delaware County on February 9, 1968.

Meanwhile, Layne filed a new Petition for Rezoning of the Subject Property, and in August of 1968 the Muncie City Council approved rezoning of the Subject Property for commercial use, thereby permitting Layne to proceed with his plans to construct a shopping center.

Buennagel then filed an Amended Complaint for Damages on February 24, 1970, but the claim for damages was later

withdrawn. Layne filed an Amended Answer on September 17, 1970, which did not include the affirmative defense of res judicata or of estoppel and filed a Second Amended Answer raising those defenses on the second day of trial (December 16, 1970).

Trial of the Injunction Suit began on December 15, 1970, and at the close of Buennagel's case Layne filed a Motion to Dismiss on the ground that the court had no jurisdiction because the Delaware Circuit Court retained jurisdiction as a court of concurrent jurisdiction, which was overruled.

Layne attempted to introduce evidence of change of conditions in the character of the neighborhood surrounding Layne Crest. However, considerable evidence was introduced revealing that the land to the north, south, and west of Layne Crest was of either a residential or noncommercial character. Layne also attempted to prove that enforcement of the restrictive covenants would result in a loss to him of nearly $450,000, whereas the loss to Buennagel and each of the members of the Association resulting from dissolution of the covenants would be only $1,000.

After taking the matter under advisement, the trial court on May 25, 1971, awarded an injunction prohibiting Layne's violation of the restrictive covenants, finding that the restrictive covenants ran with the land, that they were not dissolved by Layne's suit to vacate the Subject Property from Layne Crest, and that they could be dissolved only by an agreement of the majority of the owners or by legal action with notice to each owner.

Layne now appeals.

## ISSUES

ISSUE ONE.     Did the Vacation Suit operate to dissolve the restrictive covenants upon the Subject Property, thereby precluding their enforcement by Buennagel?

ISSUE TWO. Does the doctrine of res judicata bar the Injunction Suit brought by Buennagel because the enforcement of the restrictive covenants was an issue which could have been raised in the Vacation Suit?

ISSUE THREE. Did Delaware County Superior Court No. 2 have jurisdiction over the subject matter of the Injunction Suit?

ISSUE FOUR. Did the award of a permanent injunction against Layne constitute excessive relief as it imposed a greater restriction upon Layne than the actual terms of the restrictive covenants?

ISSUE FIVE. Were Buennagel and the members of the Association barred by laches from bringing the Injunction Suit?

ISSUE SIX. Did Buennagel and the members of the Association have an adequate remedy at law, thereby precluding equitable relief by way of an injunction?

ISSUE SEVEN. Were the conditions surrounding the development of Layne Crest so drastically changed as to warrant dissolution of the restrictive covenants?

As to ISSUE ONE, Layne argues that vacation of the Subject Property from Layne Crest operated to dissolve the restrictive covenants upon the Subject Property because the Subject Property was no longer a part of the addition.

Buennagel replies that vacation has no effect upon the enforceability of the restrictive covenants. The restrictive covenants continue to exist until they are dissolved pursuant to the terms of the covenants or proper legal action with notice.

As to ISSUE TWO, Layne contends that Buennagel and the members of the Association were estopped by the judgment in the Vacation Suit to seek enforcement of the restrictive covenants in a subsequent action for the reason that they failed to intervene in the Vacation Suit and raise the issue of the restrictive covenants.

Buennagel, however, argues that since the Vacation Suit had no effect upon the restrictive covenants, res judicata does not apply and that he was not estopped to seek enforcement of the restrictive covenants in a subsequent action.

As to ISSUE THREE, Layne contends that the Circuit Court of Delaware County first obtained exclusive jurisdiction over the parties and identical subject matter to the exclusion of the Superior Court.

Buennagel replies that the subject matter of the Vacation Suit, concerning whether or not to vacate the Subject Property from Layne Crest, was not the same subject matter as in the Injunction Suit, which concerned the enforceability of the restrictive covenants. Therefore, the Superior Court No. 2 of Delaware County did have jurisdiction over the subject matter in the Injunction Suit.

As to ISSUE FOUR, Layne contends that the award of a permanent injunction constituted excessive relief for the reason that it perpetually restrained Layne in his use of the Subject Property, thereby imposing a restriction for a period longer than that established by the covenants themselves (twenty-five years).

Buennagel agrees that the scope of the injunction should be limited to "the length of time as provided in the restrictions set forth in said plat."

As to ISSUE FIVE, Layne contends that the Injunction Suit to enforce the restrictive covenants should have been barred by the doctrine of laches for the reason that Buennagel and the members of the Association had notice of the Vacation Suit and stood idly by, allowing Layne to invest extensive

time in the planning for commercial use and rezoning of the Subject Property.

Buennagel replies that the evidence fails to show that he and the members of the Association were guilty of laches.

As to ISSUE SIX, Layne contends that Buennagel and the members of the Association had an adequate remedy at law for the reason that they at one time included in their Amended Complaint a claim for damages and for the additional reason that the value of the lots owned by Buennagel and the members of the Association would be decreased by $1,000 per lot if Layne developed the Subject Property for commercial purposes.

Buennagel replies that no adequate remedy at law exists because actual damages were incalculable due to the loss of quiet enjoyment suffered by Buennagel and members of the Association.

As to ISSUE SEVEN, Layne contends that the conditions originally surrounding Layne Crest have so changed in character that the original purpose of the restrictive covenants can no longer be accomplished. Enforcement of the restrictive covenants, therefore, would operate as a hardship upon Layne.

Buennagel replies that there has been no essential change in the character of the neighborhood as to warrant dissolution of the restrictive covenants.

Layne raises several other questions in his brief which are either insubstantial, have been rendered moot by our decision in ISSUES ONE and TWO, or have been waived pursuant to Rule AP. 8.3(A) for failure to cite authority or present a clear legal argument as to how the issues relate to the particular facts of the case under review.

## DECISION

ISSUE ONE

CONCLUSION—It is our opinion that the Vacation Suit created no issue as to the restrictive covenants, and therefore

did not operate to dissolve the restrictive covenants upon the Subject Property.

To ascertain the effect of plat vacation on restrictive covenants running with the land, our attention first turns to the single specific statute governing vacation proceedings applicable at the time this case was tried, i.e., Ind. Ann. Stat. § 48-902 (Burns 1963 Repl.), (hereafter referred to as the Vacation Act, Section 2). It provides:

> "48-902 [11213]. *Vacating lots—Petition to court.*—Any person or persons owning, either jointly or severally, and either in his, their or its own right, or in trust, and having the legal title to any land laid out in town or city lots or to any whole block or blocks of lots in any city or town, and within or not within the corporate limits, or whether under or not under the control of any incorporated city or town, may file in the circuit court of the county where such lands lie, his, their or its petition to vacate the plat of said lots or block or blocks of lots, upon the giving of notice of his, their or its intention so to do, as provided in this act, and if no remonstrance against such vacation as prayed for in said petition, upon proof of the giving of the notice required herein. If any remonstrance or remonstrances be filed against such vacation, the court shall set the petition for hearing by the court, and if no reasonable objection to the vacation be made to appear, the court shall order vacation as prayed for. [Acts 1907, ch. 279, § 2, p. 617]"

Neither the briefs nor independent research reveal any Indiana cases interpreting the effect of vacation of a portion of a plat on restrictive covenants incorporated in the plat or running with the land. So the Vacation Act must be interpreted by giving its words and phrases their plain and ordinary meaning in light of the purpose of vacation proceedings. IC 1971, § 1-1-4-1, Ind. Ann. Stat., § 1-201, (Burns Code ed.)

Its only effect is to vacate certain lots of blocks of lots from a plat.[1]

---

1. A plat has been defined in Indiana to be nothing more than a division of land into lots, streets and alleys represented on paper so they

By its express terms a person may file a petition ". . . to vacate the *plat* of said lots or block or blocks of lots . . ." Neither expressly or impliedly is there an inkling that restrictive covenants accompanying the lots or blocks are extinguished.

The sole intention of the Vacation Statute is to eliminate the lots or blocks in question from the plat, i.e., to erase them from the map of the subdivision.

So any action brought to vacate a portion of a plat is limited on the face of the Vacation Statute to the narrow issue of eliminating a portion of the plat. There is no logical basis for interpreting the Vacation Statute (as Layne contends—without benefit of authority) as effecting the dissolution of vested contractual rights running with the land in a platted subdivision.

A restrictive covenant should not be so easily dissolved. It is a contract between two parties setting forth certain restrictions upon the use and occupancy of land for consideration. Its purpose is to maintain or enhance the value of lands appurtenant to one another by controlling the nature of the surrounding lands and the uses to which they are put. *Connor* v. *Anderson* (1937), 104 Ind. App. 628, 8 N.E.2d 422; *Bachman* v. *Colpaert Realty Corp.* (1935), 101 Ind. App. 306, 194 N.E. 783; *American Cannel Coal Co.* v. *Indiana Cotton Mills* (1922), 78 Ind. App. 115, 134 N.E. 891. While they are not judicially favored, such covenants will be equitably enforced if they are set out without ambiguity and are not violative of public policy. *Bachman* v. *Colpaert Realty Corp., supra.*

Thus, the conclusion is inescapable that statutory vacation alone does not effect restrictive covenants incorporated in the plat and running with the land.

can be easily identified. *Northern Indiana Public Service Co.* v. *McCoy* (1959), 239 Ind. 301, 157 N.E.2d 181.

Our conclusion agrees with the decree of the Delaware Circuit Court which in pertinent part read:

> "3.   That a part and parcel of Layne Crest Addition, . . . being particularly described as follows: [Here follows the list of lot numbers] be and the same is hereby, vacated as a part of the plat of said addition; . . . ."

Reinforcing our view that restrictive covenants are impervious to plat vacations is their invulnerability in related areas of the law.

Rezoning is an example. Both text writers and case law agree that rezoning of an area burdened by restrictive covenants will not alone relieve that area from valid private restrictive covenants. *Suess* v. *Vogelgesang* (1972), 151 Ind. App. 631, 281 N.E.2d 536; *Capp* v. *Lindenberg* (1961), 242 Ind. 423, 178 N.E.2d 736; 2 Yokley, *Zoning Law and Practice* § 20-5 p. 461; 3 Rathkopf, *The Law of Zoning and Planning* § 74-1 *et seq.*

It has also been held that annexation to a city of an area containing restrictive covenants will not relieve the annexed area of the restrictive covenants. *Sorrentino* v. *Cunningham* (1942), 111 Ind. App. 212, 39 N.E.2d 473.

Likewise, a change in conditions of a restricted area will not relieve that area of its restrictive covenants unless the changes are so radical in nature as to defeat the original purpose of the restrictive covenants. *Sorrentino* v. *Cunningham, supra; Bachman* v. *Colpaert Realty Corp., supra.*

These cases recognize the devastating effect of allowing one party to a restrictive covenant to unilaterally dissolve that covenant. Vested contract rights in land may not be abrogated by statutory proceedings designed to serve a specific limited purpose. Equity would shudder were it otherwise.

Accord, *Metropolitan School District of Southwest Parke* v. *Vaught* (1968), 249 Ind. 412, 233 N.E.2d 155; *Wabash Valley Coach Co.* v. *Turner* (1943), 221 Ind. 52, 46 N.E.2d 212, *cert. denied,* 319 U.S. 754.

Not only does a proceeding under the Vacation Statute have no effect on restrictive covenants, but the issue raised thereunder is so narrow by its specific terms (particularly Sec. 4 infra) that an issue as to the dissolution of the covenants could not be raised—as will appear in our discussion of ISSUE TWO.

So, the Vacation Suit itself, did not, and could not, have operated to dissolve the restrictive covenants.

ISSUE TWO

CONCLUSION—It is our opinion that the Injunction Suit was not barred by the doctrine of res judicata.

Having determined that statutory vacation alone does not affect restrictive covenants incorporated in the plat and running with the land, the answer to Layne's argument that the Injunction Suit is barred by the Vacation Suit, is relatively simple.

The doctrine of res judicata arises to bar litigation of issues in an action which could have been litigated in a prior suit when the subsequent suit was founded upon the same claim previously litigated and conclusively determined among the same parties in the suit. *Barker* v. *State* (1963), 244 Ind. 267, 191 N.E.2d 9; *Beatty* v. *McClellan* (1951), 121 Ind. App. 242, 96 N.E.2d 675; *Linville* v. *Chenoweth* (1949), 119 Ind. App. 515, 84 N.E.2d 473; *Town of Flora* v. *Indiana Service Corp.* (1944), 222 Ind. 253, 53 N.E.2d 161.

The Third District of this Court has recently summarized the rule in terms of these elements:

"The basic elements of res adjudicata are fourfold: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) *the matter now in issue* was, or *might have been, determined in the former suit;* (3) the particular controversy adjudicated in the former action must have been between the parties to the present suit;

and (4) judgment in the former suit must have been rendered on the merits." *Crown Point Community School Corporation* v. *Richards* (1972), 154 Ind. App. 545, 290 N.E.2d 449 (emphasis supplied. *Wright* v. *Kinnard* (1970), 147 Ind. App. 484, 262 N.E.2d 196.

So, assuming without deciding that there were the same "parties" to these two "actions", the same subject matter or claim must also be involved for res judicata to apply.

Under ISSUE ONE, we interpreted the Vacation Act as excluding from the subject matter before the Circuit Court in the Vacation proceedings the vested contractual rights arising from the restrictive covenants. Consequently, there could not be a duplication of issues in the two suits. The dissimilarity of the subject matter in the two suits is further indicated by Section 4 of the Vacation Act, [Ind. Ann. Stat. § 48-904 (Burns 1963 Replacement)] hereinafter set out, which limits the grounds for denying vacation.

The matter in issue in the Vacation Suit was not only different from the issue in the Injunction Suit but the issue of enforcement of the restrictive covenants could not have been raised in the Vacation Suit.

The limited character of the Vacation Suit is borne out not only by the terms of the Vacation Act, but also by reference to Section 4 of the Vacation Act, which narrowly restricts the grounds for denial of vacation:

> First. Because such addition, subdivision or part thereof, or street or alley therein, or other public ground, so sought to be vacated is necessary to the growth of the town or city in which the same is situate or which the same adjoins.
> Second. That the proposed vacation will leave the real estate of the remonstrant or remonstrants, within any such town or city, without ingress or egress by means of a public way or street.
> Third. That such vacation will cut off the public's access to some church, school or other public building or grounds. (Ind. Ann. Stat. § 48-904 (Burns 1963 Replacement.)

Section Four thus confines the grounds of remonstrance to those specified. Indiana courts have held that it is improper

to recognize any other grounds of remonstrance. *City of Peru* v. *Cox* (1909), 173 Ind. 241, 90 N.E. 7; *City of Jasper* v. *Taichert and Schneider* (1936), 103 Ind. App. 302, 7 N.E.2d 534.

In view of the unambiguous language of the statutes applicable to vacation proceedings, there is no rational basis for holding that Buennegal could have appeared in the Vacation Suit and asserted rights arising out of the restrictive covenants. It was not an issue that "might have been determined" in the Vacation Suit.

Furthermore, Buennegal and those similarly situated as lot owners in the development were not personally notified of the bringing of the Vacation Suit. The notice published pursuant to Ind. Ann. Stat. § 48-909 (Burns 1963 Repl.) is intended to notify the citizenry at large of the existence of a vacation proceeding and right is afforded to remonstrate *against such vacation. See:* Ind. Ann. Stat., §§ 48-902, 48-909, (Burns 1963 Replacement).

ISSUE THREE

CONCLUSION—It is our opinion that Delaware County Superior Court No. 2 had jurisdiction over the subject matter of the Injunction Suit.

To deprive Delaware County Superior Court No. 2 of jurisdiction over the subject matter of the subsequent Injunction Suit, Layne falsely assumes that the subject matter of the Vacation Suit and the Injunction Suit were identical.

It is his theory that in the initial Circuit Court case involving the Vacation Suit, the subject property became non-plat property and therefore not subject to the restrictive covenants, *i.e.,* the covenants were applicable only to property outside the vacated portion of the plat. By this boot-strapping approach Layne concludes that the subject matter of both suits was the same because they each were concerned with a determination whether the Subject Property was to remain in or

out of Layne Crest Addition. Therefore, Layne argues, Superior Court No. 2 being a court of concurrent jurisdiction, could not acquire jurisdiction as the Circuit Court already had jurisdiction.

It is obvious from our discussion and the conclusions reached in ISSUES ONE and TWO that this argument is devoid of merit. No issue existed or could have existed as to the enforceability of the restrictive covenants in the Vacation Suit. The subject matter of the two suits was not identical.

ISSUE FOUR

CONCLUSION—It is our opinion that the scope of the permanent injunction awarded by the Delaware County Superior Court No. 2 against Layne must be limited to the terms established by the restrictive covenants.

The terms of the restrictive covenants when recorded by Layne provided that the covenants would continue in full force and effect for a period of twenty-five years, to be renewable automatically for successive periods of ten years unless otherwise dissolved pursuant to the terms of the covenants.

When the trial court issued a permanent injunction against Layne's violation of the restrictive covenants, it failed to limit the scope of the permanent injunction to the period established by the restrictive covenants and therefore ostensibly imposed a restriction for a period longer than that established by the covenants themselves.

Buennagel agrees with Layne's contention that the scope of the injunction should be limited to "the length of time as provided in the restrictions set forth in said plat." So be it.

In passing we note Layne also argues that the award of the Superior Court No. 2 of Delaware County in the Injunction Suit has the effect of creating an excessive monetary loss for Layne because he will not be able to sell the Subject Property

for commercial use, thereby imposing a greater loss upon Layne than the loss suffered by Buennagel and the Association.

To consider this argument seriously we would be compelled to reweigh the evidence, which we can not do.

ISSUE FIVE

CONCLUSION—It is our opinion that Buennagel and the members of the Association were not barred by laches from the Injunction Suit.

Having raised the doctrine of laches, it was incumbent upon Layne to affirmatively prove laches on the part of Buennagel by presenting positive evidence in support thereof. Ind. Rules of Trial Procedure, Rule TR. 8 (C).

As indicated in ISSUES ONE and TWO, the Vacation Suit had no effect upon the enforceability of the restrictive covenants. Buennagel was under no duty to, and in fact could not, appear and assert contractual rights arising out of the restrictive covenants, although the vacation could have been opposed on the grounds allowed by statute.

The Vacation suit was commenced in January of 1967 and judgment rendered March 23, 1967.

On September 7, 1967, Layne exhibited an intention to violate the restrictive covenants by obtaining a permit from the Muncie Planning Commission to rezone the Subject Property for commercial use (later overruled by the Muncie City Council).

Buennagel then sought to enforce the restrictive covenants by filing the Injunction Suit in February of 1968.

Under these circumstances five months hardly constitutes laches.

ISSUE SIX

CONCLUSION—It is our opinion that there was sufficient evidence indicating Buennagel and the members of the As-

LAW LIBRARY

JUN 2 1 1977

University of Iowa

sociation did not have an adequate remedy at law and therefore properly sought relief by way of an injunction.

Although certain evidence did tend to indicate that the value of the lots owned by Buennagel and the members of the Association would be decreased by approximately $1,000 per lot if Layne developed the Subject Property for commercial purposes, there was also evidence that actual total damages would be incalculable because of loss of quiet enjoyment by adjacent resident owners (Buennagel et al.). So there was evidence that Buennagel's legal remedy was inadequate, making equitable relief by way of injunction proper.

## ISSUE SEVEN

CONCLUSION—It is our opinion that there was sufficient evidence indicating conditions surrounding the development of Layne Crest had not so drastically changed as to warrant dissolution of the restrictive covenants.

Generally, if the conditions which made restrictive covenants feasible at the time of their inception no longer exist, courts will not enforce the covenants. *American Cannel Coal Co.* v. *Indiana Cotton Mills, supra.* The changes occurring in a neighborhood must be so radical in character as to defeat the original purpose of the restrictive covenant. However, where the change is not so fundamental, the covenants will remain in full force and effect. *Bachman* v. *Colpaert Realty Corp., supra.*

There was evidence showing that the only use of the lots in Layne Crest at the time of trial was for residential purposes and that none of the lots were ever put to a commercial use. Furthermore, there was evidence disclosing that the territory surrounding Layne Crest to the north, south, and west was used for essentially noncommercial purposes. While there was some conflicting evidence tending to show a limited commercial development in a certain area around Layne Crest

(the land to the east of Layne Crest), we will not weigh the evidence. There was sufficient evidence to support the trial court's obvious conclusion there was not such a fundamental change in circumstances as to warrant dissolution of the restrictive covenants.

The judgment of the trial court is therefore affirmed, except it shall be modified to limit the duration of the Injunction to the length of time provided for in the plat restrictions of Layne Crest Addition.

Sullivan and White, JJ., concur.

NOTE.—Reported at 301 N.E.2d 671.