**UNION INSURANCE COMPANY, Appellant (Defendant Below),**

v.

**STATE of Indiana ex rel. INDIANA DEPARTMENT OF INSURANCE, Appellee (Plaintiff Below).**

No. 2–978–A–330.

Court of Appeals of Indiana, Second District.

March 24, 1980.

Rehearing Denied June 2, 1980.

Paul G. Smith, Smith, Pearce, Barr & Howard, Noblesville, for appellant.

Theodore L. Sendak, Atty. Gen., Alembert W. Brayton, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-appellant Union Insurance Company (Union) appeals the entry of a summary judgment for a mandatory injunction against it, claiming: procedural errors; error by the trial court in ruling that Union must comply with the insurance laws and regulations of the State of Indiana; and that res judicata estops the State.

We affirm.

## FACTS

The facts [1] necessary to our disposition of this appeal are: Union's predecessor, the Franklin Insurance Company, was incorporated on February 13, 1851, by a special charter granted and approved by the Indiana General Assembly which provided that the corporation was to exist for fifty years after the passage of the law, that is, until February, 1901.

The Franklin Insurance Company's charter was granted under the Indiana Constitution of 1816, which was superseded by Indiana's present Constitution adopted November 1, 1851.

In 1869, and again in 1873, the Indiana General Assembly purportedly amended the act creating the Franklin Insurance Company by granting to it, *inter alia*, perpetual existence.

Between the years of 1946 and 1973 Union (and its predecessors) was involved in litigation concerning Union's existence under its original charter as amended. This litigation was followed in 1975 by the State commencing this suit for a mandatory injunction in the Hamilton Superior Court, claiming the charter upon which Union based its existence had expired, thereby requiring Union to comply with the regulations of the Department of Insurance.

Union filed a motion to dismiss which the court treated as a motion for summary judgment, an evidentiary hearing was held, and summary judgment was granted for the State pursuant to Indiana Rules of Procedure, Trial Rule 56.

Union now appeals.

## ISSUES

Union presents three issues for our consideration: [2]

1. Was the proper procedure followed in granting summary judgment on an injunction in that the State did not prove nor did the court find that the State did not have an adequate remedy at law and that it had suffered irreparable injury.

2. Was Union a valid charter insurance company and therefore not subject to regulation by the Department of Insurance?

---

1. The facts of this litigation are primarily gleaned from the evidentiary hearing held on the motion to dismiss (summary judgment).

2. Pursuant to Appellate Rule 8.3(A)(7) and Trial Rule 59(G) we have combined those issues addressing the same subject and will not address issues which Union did not raise in its motion to correct errors.

 As to the procedural errors, Union alleges the trial court erred in not specifically finding that there were no material issues of fact. This

issue, however, was not raised in the motion to correct errors and is waived, as is Union's fifth issue claiming error in the trial court's refusal to stay execution of the injunction.

Union has raised in its reply brief that the thirty day notice requirement of *Ind. Code*, 27–1–3–19 was not complied with by the State; this objection to non-compliance was not raised at trial nor in the motion to correct errors and is therefore waived.

3. Whether previous litigation on the issue of Union's legitimate existence require application of the doctrine of res judicata and serve as a bar to this litigation.

## DECISION

*ISSUE ONE*—Was the proper procedure followed in granting the summary judgment.

*PARTIES' CONTENTIONS*—Union contends that a prerequisite to the grant of a summary judgment is proof by the plaintiff and a finding by the trial court that the plaintiff did not have an adequate remedy at law and that it had suffered irreparable injury.

The State responds that the power to seek a summary judgment is provided to the State by statute and no such showing is necessary.

*CONCLUSION*—*Ind. Code* 27–1–3–19 authorizes the State to seek a mandatory injunction if it believes an insurance company is engaging in illegal practices, and no showing of irreparable injury or an inadequate remedy at law is necessary.

The governing statute is rather specific. *Ind. Code* 27–1–3–19 provides, *inter alia* :

*Whenever it shall appear*, to the department *that any insurance company* to which this act is applicable, *is conducting its business contrary to law* ; or in an unsafe or unauthorized manner; or that the capital or the surplus fund of any such insurance company is impaired or has been reduced below the amount required by law; or that any such insurance company has failed, neglected or refused to observe and comply with any order, rule or regulation of the department, then *the department is hereby authorized* . . . [to] *bring an action against any such insurance company*, its officers and agents, *to enjoin* any such insurance company from conducting or engaging in any such illegal, unauthorized or unsafe practice, or to require it to restore any impairment of its capital or surplus fund, or to compel any such insur-

ance company to observe and comply with any such lawful order, rule or regulation duly issued by the department. Every such action shall be brought by the attorney-general for the state of Indiana in the name of the state of Indiana on the relation of "the department of insurance," in the circuit or the superior court of the county in which any such insurance company has its principal place of business . . . . (emphasis added)

 Thus, the legislature has declared that if an insurance company is engaged in any of the prohibited practices, there is no adequate legal remedy and irreparable injury exists as a matter of law. No separate proof or finding of these elements need be made. It is within the power of the Indiana General Assembly to modify common law rules and remedies. *See Schrenker v. Clifford* (1979), Ind., 387 N.E.2d 59; *see also, e. g., Bissell Carpet Sweeper Co. v. Shane Co.* (1957), 237 Ind. 188, 143 N.E.2d 415; *Cook v. Mercury Lumber Co.* (1977), Ind.App., 359 N.E.2d 600.

*ISSUE TWO*—Was Union a valid charter insurance company and therefore not subject to regulation by the Department of Insurance.

*PARTIES' CONTENTIONS*—Union contends that it exists pursuant to a valid charter granted in 1851 and subsequently amended to confer upon it perpetual existence; Union's status as a special insurance company immunizes it from the rules and regulations of the Department of Insurance.

The State responds that the charter by which Union claims its existence has expired and the attempts by the legislature to extend the charter were null and void. *CONCLUSION*—Union's charter expired in 1901; the legislature did not have the power to extend the charter.

 Oft repeated are the appellate principles that a summary judgment can be granted only if there is no material issue of fact to be determined at trial, *North Miami Consolidated School District v. State ex rel.*

*Manchester Community Schools* (1973), 261 Ind. 17, 300 N.E.2d 59; *Central Realty, Inc. v. Hillman's Equipment, Inc.* (1969), 253 Ind. 48, 246 N.E.2d 383; *Tekulve v. Turner* (1979), Ind.App., 391 N.E.2d 673, and that in reviewing an order for a mandatory injunction we will reverse only if there is an abuse of discretion. *Weis v. Cox* (1933), 205 Ind. 43, 185 N.E. 631; *City of Muncie v. Pizza Hut of Muncie, Inc.* (1976), Ind.App., 357 N.E.2d 735; *Johnson v. Northwestern School Corp.* (1976), Ind.App., 352 N.E.2d 531.

The parties agree and the record supports the conclusion that there was no genuine issue as to any material fact before the trial court. Only questions of law are to be determined.

The central legal question revolves around the act which created the charter establishing Union, the amendments of the act by the General Assembly attempting to extend this charter, and the Constitution under which these amendments were enacted. If Union does not exist pursuant to a valid charter the trial court acted within its discretion by entering a mandatory injunction ordering Union to cease doing business until it complies with Indiana insurance laws.

The original charter granted February 13, 1851, creating Union's predecessor provided for an existence of fifty years after the passage of the law. The Indiana Constitution of 1816 under which this charter was granted was superseded by Indiana's present Constitution which was adopted November 1, 1851.

The 1851 Constitution states:

All laws now in force, and not inconsistent with this Constitution, shall remain in force, *until they shall expire* or be repealed. (emphasis added) [3]

It also provides in Article 11, Section 13 of Indiana's of 1851 Constitution that "*Corporations* other than banking *shall not be created by special act* but may be formed under general laws." (emphasis added).

In 1869 and again in 1873 the Indiana General Assembly purportedly amended the act creating Union's predecessor by granting to it, *inter alia*, perpetual existence. Could the legislature so act? No, said the Indiana Supreme Court in the vintage case of *In re Bank of Commerce* (1899), 153 Ind. 460, 53 N.E. 950, 55 N.E. 224; appeal dismissed 189 U.S. 506, 23 S.Ct. 851, 47 L.Ed. 921. Confronted with a situation almost identical to the one before us the Court decided that the attempted extension of a limited charter of an insurance company by an act passed after the adoption of the 1851 Constitution was void. The Court carefully considered the language of Article 11, Section 13 and distinguished between an act of the General Assembly *regulating* an existing special charter corporation and an act *creating* a special charter corporation, holding:

To determine whether or not the extension of an old special charter is violative of the present constitution, it is necessary to ascertain exactly what a legislature does in creating business corporations by special laws. If the action in granting a new special charter and in extending an old special charter is found to be identical in essence, and if the mischief intended to be remedied is the same, the cases are equally offensive. . . . To grant leave to certain persons to act as a corporation, who have not conducted business together before, and to grant leave to certain persons to act as a corporation, who have been or are conducting business together through a corporate organization, are identical in essence.

153 Ind. at 472–73, 53 N.E. at 955.

In a case questioning the regulation of a street railway, the Supreme Court put it more concisely:

It is one thing to create a corporation, bring it into existence, and quite another, as an existing corporation, to regulate its

---

**3.** This language is taken from the Schedule of the 1851 Indiana Constitution which is a part of the Constitution and amended to the end of it. The Schedule provides details and explanation to assist in accomplishing a smooth and consistent transition of government from one Constitution to another.

conduct and relations as to other corporations and persons. It has been decided in many cases that, when a corporation has been created, a special act regulating it, without changing the organization of the corporate body, is not within the prohibition.

*City of Indianapolis v. Navin* (1898), 151 Ind. 139, 147–48, 47 N.E. 525, 527.

■ Granting a new term of existence, i. e., from a limited fifty year term to perpetual existence, is tantamount to creating a new corporation in violation of the constitutional prohibition. Such legislative action is much more than mere regulation of that corporation, and is unconstitutional. *See also Marion Trust Co. v. Bennett* (1907), 169 Ind. 346, 82 N.E. 782; *Clark v. American Cannel Coal Co.* (1905), 165 Ind. 213, 73 N.E. 1083; *Town of Longview v. City of Crawfordsville* (1905), 164 Ind. 117, 73 N.E. 78; *Smith v. Indianapolis Street Railway Corp.* (1902), 158 Ind. 425, 63 N.E. 849; *City of Indianapolis v. Navin* (1897), 151 Ind. 139, 41 N.E. 525, 51 N.E. 80.

■ The opinion in *Bank of Commerce* stands the test of time. No developments in the law of this State of which we are aware, constitutional or otherwise, militate against the wisdom of its fundamental holding that "neither a general nor a special law can stand that involves the exercise of a power withdrawn from the General Assembly by the Constitution." 153 Ind. at 462, 53 N.E. at 951–52. And the power to "create" corporations in this manner had been withdrawn. The Court went on to say that not only did the extension of a special charter violate Art. 11, § 13 of the 1851 Constitution, but it also violated Art. 1, § 23:

Legislation granting a new term of life to corporations organized under old special charters is also repugnant to § 23 of article 1 of the Constitution. The legislature would be granting to particular citizens privileges and immunities which, upon the same terms, would not belong to all citizens. . . .

[The Legislature] may not confer upon particular citizens the privilege (private right) of writing any and all sorts of insurance upon property and life without supervision or safeguard, while insurance companies in general are impeded by legal limitations from doing likewise. If it were not for the special privileges and immunities contained in the old charter, it is to be presumed that the persons interested in this appeal would have been content to conduct their insurance business under the general laws.

153 Ind. at 474, 53 N.E. at 955–56.

■ Union's arguments that it has been denied due process and that its contract with the State has been impaired are countered by the Court's analysis in *Bank of Commerce* that "When the license ends, the special privilege ends." 153 Ind. at 473, 53 N.E. at 955. It was the granting of these special charters prior to 1851 that was one of the vices eliminated by the replacement of the 1816 Constitution. So, when Union's original charter expired in February of 1901, its special privilege was obliterated by the constitutional process. Its "contract" simply ran out in 1901. And Union is not so bold as to claim that the 1851 Constitution came into being in such a manner as to deny Union due process.

Thus we conclude that Union is not a valid charter insurance company, and legislative attempts to breathe new (perpetual) life into its limited charter were abortive.

*ISSUE THREE*—Whether previous litigation on the issue of Union's legitimate existence acts as res judicata and a bar to this present litigation.

*PARTIES' CONTENTIONS*—Union asserts that prior lawsuits in which Union was a party operate as res judicata and estop the State, on the relation of the Department of Insurance, from further litigating the issue.

The State responds that these lawsuits have no res judicata effect.

*CONCLUSION*—The evidence of former adjudications on the subject of Union's "valid existence" does not establish res judicata and does not bar this litigation.

■ One engaged in litigation does not easily wrap the protective mantle of res judicata around his cause. The doctrine of res judicata has four essential elements:

(1) the former judgment must have been rendered by a court of competent jurisdiction;

(2) the matter now in issue was, or might have been, determined in the former suit;

(3) the particular controversy adjudicated in the former action must have been between the parties to the present suit;

(4) judgment in the former suit must have been rendered on the merits.

*McCarthy v. McCarthy* (1974), 159 Ind.App. 540, 308 N.E.2d 429; *Bob Layne Contractor, Inc. v. Buennagel* (1973), 158 Ind.App. 43, 301 N.E.2d 671; *Crown Point Community School Corporation v. Richards* (1972), 154 Ind.App. 545, 290 N.E.2d 449.

So we look to see if there was identity of parties and the same subject matter of claim, involved in the prior litigation.

■ At the summary judgment hearing Union offered into evidence three prior lawsuits. The first two can be easily rejected. The first suit entitled *In the Matter of the Petition of the Franklin Insurance Company to Change Name* was brought in 1946 in the Marion County Circuit Court; this lawsuit concerned solely a name change for Franklin Insurance Co. The second lawsuit, *State of Indiana on the Relation of Frances N. Ellis, Prosecuting Attorney for the 24th Judicial Circuit for the State v. Franklin General Insurance Company* was brought in 1953 in the Hamilton Circuit Court. This litigation dealt with whether Union's predecessor was obligated to file insurance coverage information with the Department of Motor Vehicles. The issues in controversy in these two prior lawsuits were obviously not the same as that litigat-ed in the current suit. Thus no res judicata. *In re Big Raccoon Conservancy District* (1977), Ind.App., 363 N.E.2d 1004; *McCarthy v. McCarthy, supra.*[4]

The third lawsuit was brought in the Hamilton Circuit Court in 1973 entitled *Frances G. Day, Relator v. John Clark et al, Defendants.* The parties to this litigation were the Relator (Plaintiff), Frances G. Day, who was both secretary of the Franklin General Insurance Company (Franklin) and the wife of C. W. Day (the president of Franklin); included among the defendants were C. W. Day, Franklin, and C. Donald Dawson, the prosecuting attorney of Hamilton County.

The litigation was resolved by summary judgment on the motion of the defendants with the court determining that there was no genuine issue of material fact. Part of the court's finding was:

6. That the Franklin Insurance Company was incorporated and created by the laws of the State of Indiana, Acts 1851–1852, Chapter CCXLI, approved February 15, 1851, and amendments thereto.

8. That the Franklin General Insurance Company is a valid, viable, existing and perpetual company (corporation) incorporated, organized, created and existing under any by virtue of the laws of the State of Indiana hereinabove set forth.

11. That said Company is a domestic Company (corporation), duly authorized and qualified in the State of Indiana to engage in such business as authorized by the statutes creating and applying to said Company (thereby granting said Company its "Special Charter"), and that said Company is duly authorized and qualified to engage in any and all forms, kinds and classes of insurance business, including the bonding business, in the State of Indiana, and to fix the rates and premiums therefor, and that said Company has the

4. We note that the evidence of these two lawsuits was presented at the summary judgment hearing in the form of judgments by the trial court. These two judgments were neither file stamped nor were they signed by the presiding judge of the court. Therefore, it is questiona-ble that they had any evidentiary value. The issue of the validity of these prior lawsuits, however, is not material for as indicated, even assuming they are valid, they have no res judicata effect.

authority and power to do all things necessary and incidental to the existence and operation of said Company including the appointment and licensing of its own agents, and that such agents need not be licensed by the State of Indiana, and that said Company is not subject to an action in receivership for insolvency and cannot be placed in receivership for insolvency.

13. That the following Laws of the State of Indiana are applicable to the creation, existence and operation of said Company, and none other:

Acts 1851, Chapter CCXLI, page 434;

Acts 1869, Chapter XXXIV, page 73;

Acts 1873, Chapter LIV, page 145;

Acts 1883, Chapter CXI, page 135.

And in entering judgment:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the said Franklin General Insurance Company is a valid, viable, existing and perpetual company (corporation) created, incorporated, organized and existing under any [sic] by virtue of the laws of the State of Indiana, as hereinabove set forth, and that said Company has all the authority, rights, duties, powers and privileges set forth in said laws, and that said laws constitute a binding, effective contract between the State of Indiana and said Company which contract the State of Indiana cannot lawfully repeal, abrogate, alter or restrict in any manner so as to impair the rights, powers or authority of said Company, and that no legislation enacted subsequent to said laws creating and governing the operation of said Company shall affect, either directly or indirectly, the rights and powers of said Company to conduct and engage in the businesses authorized by said laws and as herein set forth.

This lawsuit did purport to establish Union as a valid insurance company, but it does not estop this action.

The Indiana Supreme Court has established:

It is a fundamental rule of the doctrine of res judicata that "to constitute a judgment an estoppel there must be a sub-stantial identity of parties as well as of the subject matter; that is, it is necessary that the parties as between whom the judgment is claimed to be an estoppel must have been parties to the action in which it was rendered, in the same capacities and *in the same antagonistic relation*, or else they must be in privity with the parties in such former action." 34 C.J., Judgments, § 1405. This is necessary to the end that the constitutional guaranty that no man shall be deprived of his property except by due process of law shall be preserved. (emphasis added)

*Schwegman v. Neff* (1940), 218 Ind. 63, 67, 29 N.E.2d 985, 986.

 Our courts have also held that a real party in interest is one who is directly interested in the subject matter has a right to make a defense or control proceedings, and to appeal from the judgment. *Mayhew v. Deister* (1969), 144 Ind.App. 111, 244 N.E.2d 448; *Smith v. Midwest Mutual Insurance Company* (1973), 154 Ind.App. 259, 289 N.E.2d 788; *Tobin v. McClellan* (1947), 225 Ind. 335, 73 N.E.2d 679, 75 N.E.2d 149. Courts look beyond mere nominal parties and hold estopped only those parties whose interests were directly involved. *State v. Speidel* (1979), Ind.App., 392 N.E.2d 1172; *Smith v. Midwest Mutual Insurance Co.*, *supra*.

 The Relator (Plaintiff), Frances Day, wife of the President of Franklin and an officer (Secretary) of Franklin, was the party ostensibly challenging the valid existence of Franklin. The county prosecutor, named as a defendant, was not in a truly adversary position to Franklin. As a passive defendant he was not a real party in interest and was not in control of the legal challenge to Franklin's existence. Frances Day, Franklin's Secretary and wife of the President of Franklin, had exclusive mastery of this vital question. The State of Indiana and its interests on behalf of the public were not truly represented.

Also, the record does not include the pleadings or the issues actually litigated. It reveals only a judgment showing Frances

Day as the sole Relator (Plaintiff), numerous named defendants (approximately 55),[5] and the court's conclusion that Franklin "is a valid . . . perpetual company (corporation) . . . existing under . . the laws of the State of Indiana . . .."

Under these circumstances, the fundamental element of a meaningful "antagonistic relation" is missing. *Schwegman v. Neff, supra; Smith v. Midwest Mutual Insurance, supra.*

We, therefore, in all respects, affirm the mandatory injunction for the State on the relation of the Department of Insurance.

Affirmed.

SULLIVAN, J., and MILLER, J. (by designation), concur.

---

5. The State has characterized this litigation as a "friendly suit."